SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Jaime Taormina Bisbing v. Glenn R. Bisbing, III (A-2-16) (077533)**

**Argued March 29, 2017 -- Decided August 8, 2017**

**PATTERSON, J., writing for the Court.**

In this appeal, the Court addresses the showing necessary to establish "cause" under N.J.S.A. 9:2-2 for the entry of an order authorizing a parent to permanently relocate out of state with his or her child, despite the other parent's opposition to the child's interstate move.

Following their separation, plaintiff Jaime Taormina Bisbing and defendant Glenn R. Bisbing, III, agreed on the terms of a Marital Settlement Agreement (Agreement), which they executed on March 8, 2014. With respect to their twin daughters, the Agreement provided that plaintiff would have primary residential custody. It also included a relocation provision, stating, in part, that "[n]either party shall permanently relocate with the Children from the State of New Jersey without the prior written consent of the other." On April 16, 2014, the trial court entered a judgment of divorce, incorporating the terms of the Agreement. On January 8, 2015, plaintiff informed defendant that she intended to marry Jake Fackrell, a Utah resident whom she had begun dating prior to the parties' divorce. Plaintiff asked defendant to consent to the permanent relocation of the children to Utah. Defendant replied that plaintiff was free to move to Utah, but that the children must remain in New Jersey with him.

Plaintiff filed a motion pursuant to N.J.S.A. 9:2-2, seeking an order permitting her to permanently relocate the children to Utah. Defendant contended that plaintiff had negotiated the Agreement in bad faith, securing his consent to her designation as parent of primary residence without informing him that she contemplated relocating. Without holding a plenary hearing, the trial court applied the standard established in Baures v. Lewis, 167 N.J. 91, 118-20 (2001): A parent with primary custody seeking to relocate children out of state over the objection of the other parent must demonstrate only that there is a good-faith reason for an interstate move and that it "will not be inimical to the child's interests." The court granted plaintiff's application for relocation, explaining that she presented a good-faith reason and that the move would not be inimical to the children's interests. Plaintiff moved with the children to Utah and enrolled them in an elementary school.

The Appellate Division reversed and remanded for a plenary hearing. 445 N.J. Super. 207 (App. Div. 2016). The panel found that there was a genuine issue of material fact as to whether plaintiff negotiated the custody provisions of the Agreement in good faith. It ruled that if the trial court concluded that she had acted in bad faith, it should resolve the relocation motion using the best interests standard instead of the more lenient "not . . . inimical to the child's interests" standard of Baures. The panel held that if defendant failed to prove plaintiff's bad faith, the trial court would then determine whether plaintiff proved a substantial and unanticipated change in circumstances that would permit her to avoid the Agreement's relocation provision. The panel directed the trial court to apply the best interests of the child standard if plaintiff failed to prove a substantial and unanticipated change.

Following the panel's decision, plaintiff returned with her children to New Jersey. The trial court denied her motion for a stay and ordered the parties to abide by the residency provisions in the Agreement. The Court granted plaintiff's petition for certification. 227 N.J. 262 (2016).

**HELD:** The Court recognizes a "special justification" to abandon the standard it established in Baures v. Lewis, 167 N.J. 91 (2001) for determining the outcome of contested relocation determinations pursuant to N.J.S.A. 9:2-2. In place of the Baures standard, courts should conduct a best interests analysis to determine "cause" under N.J.S.A. 9:2-2 in all contested relocation disputes in which the parents share legal custody.

1. New Jersey's custody statute was enacted to further the public policy "to assure minor children of frequent and continuing contact with both parents after" separation or divorce. N.J.S.A. 9:2-4. The Legislature provided that "[i]n any proceeding involving the custody of a minor child, the rights of both parents shall be equal," ibid., and prescribed a non-exclusive list of factors to guide a court charged to determine the custody arrangement that most effectively serves the child's best interests. A custody arrangement adopted by the trial court is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4. (pp. 15-18)

2.  N.J.S.A. 9:2-2 requires a showing of "cause" before a court will authorize the permanent removal of a child to another state without the consent of both parties.  In Baures, the Court held that in the shared-custody setting, the trial court should treat the relocation application as "governed initially by a changed circumstances inquiry and ultimately by a simple best interests analysis."  Id. at 116.  But if the parent seeking removal is the custodial parent, that parent would establish "cause" under N.J.S.A. 9:2-2 if he or she proved good faith and that the move would not be inimical to the child's interest.  The Court identified two developments in support of its alteration of the governing standard for N.J.S.A. 9:2-2 relocation applications:  (1) social science research indicated that when a relocation benefits a "custodial parent," it will similarly benefit the child; and (2) the growing trend in the law easing restrictions on the custodial parent's right to relocate with the children.  Because the parties' custodial arrangement is potentially dispositive when a court determines whether to authorize relocation under Baures, a collateral dispute regarding the parties' good faith in their custody negotiations may arise.  In such cases, the Appellate Division has held that the best interests standard would apply rather than the Baures standard.  (pp. 18-25)

3.  In considering whether to retain the Baures standard as the benchmark for contested relocation determinations, the Court recognizes that it has always required a departure from precedent to be supported by some special justification.  Such justification might be found when experience teaches that a rule of law has not achieved its intended result.  (pp. 25-26)

4.  In deciding Baures, the Court did not intend to either diverge from the best interests standard at the core of the custody statute or circumvent the legislative policy giving parents equal rights in custody proceedings.  Instead, the Court created the two-pronged "good faith" and "not . . . inimical to the child" test based on social science research and trends in the law.  Since the Baures decision, however, the vigorous scholarly debate among social scientists who have studied the impact of relocation on children following divorce reveals that relocation may affect children in many different ways.  Moreover, the progression in the law toward recognition of a custodial parent's presumptive right to relocate with children, anticipated by this Court in Baures, has not materialized.  Today, the majority of states impose a best interests test when considering a relocation application filed by a custodial parent; some have recently abandoned the presumption in favor of that parent.  The standard adopted in Baures did not represent a lasting trend in the law.  Moreover, by tethering the relocation standard to one party's status as the custodial parent, the Baures standard may generate unnecessary disputes regarding that designation.  Accordingly, the Court recognizes a "special justification" in this case to abandon that standard.  (pp. 26-35)

5.  In place of the Baures standard, courts should conduct a best interests analysis to determine "cause" under N.J.S.A. 9:2-2 in all contested relocation disputes in which the parents share legal custody—whether the custody arrangement designates a parent of primary residence and a parent of alternate residence, or provides for equally shared custody.  A number of the statutory best interests factors will be directly relevant in typical relocation decisions, and additional factors not set forth in the statute may also be considered in a given case.  Contrary to plaintiff's contention, the relocation constraints imposed by N.J.S.A. 9:2-2 do not infringe on the relocating parent's constitutional right to interstate travel.  (pp. 35-39)

6. The Court remands to the trial court for a plenary hearing to determine whether the custody arrangement set forth in the parties' Agreement should be modified to permit the relocation of their daughters to Utah.  It does not agree with defendant's assertion that by consenting to the interstate relocation provision of the Agreement, plaintiff waived her right to a judicial determination of her relocation application under N.J.S.A. 9:2-2.  However, plaintiff must demonstrate changed circumstances to justify modification of the Agreement, and, because the relocation is permanent, she must demonstrate that there is "cause" for an order authorizing it.  In that inquiry, "cause" should be determined by a best interests analysis in which the court will consider all relevant factors set forth in N.J.S.A. 9:2-4(c), supplemented by other factors as appropriate.  Because the best interests standard applies to the determination of "cause" notwithstanding plaintiff's designation as the parent of primary residence, the court need not decide whether plaintiff negotiated the parties' Agreement in bad faith.  (pp. 39-41)

      The judgment of the Appellate Division is **MODIFIED** and **AFFIRMED**, and the matter is **REMANDED** to the trial court for proceedings in accordance with this opinion.

      **CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.**

JAIME TAORMINA BISBING,

    Plaintiff-Appellant,

       v.

GLENN R. BISBING, III,

    Defendant-Respondent.

> Argued March 29, 2017 – Decided August 8, 2017
>
> On certification to the Superior Court, Appellate Division.
>
> Paul H. Townsend argued the cause for appellant (Townsend, Tomaio & Newmark, attorneys; Paul H. Townsend, of counsel and on the brief; Valerie R. Wane, on the brief).
>
> Matheu D. Nunn argued the cause for respondent (Einhorn, Harris, Ascher, Barbarito & Frost, attorneys).
>
> Timothy F. McGoughran argued the cause for amicus curiae New Jersey State Bar Association (Thomas H. Prol, President, of counsel; Timothy F. McGoughran, Brian G. Paul, Derek M. Freed, and Albertina Webb, on the brief).

    JUSTICE PATTERSON delivered the opinion of the Court.

    This appeal arises from a trial court's post-judgment determination authorizing a mother to permanently relocate with her children out of state, notwithstanding their father's objection to the children's move. It requires that we address

the showing necessary to establish "cause" under N.J.S.A. 9:2-2 for the entry of an order authorizing a parent to relocate out of state with his or her child, despite the other parent's opposition to the child's interstate move.

Plaintiff Jaime Taormina Bisbing and defendant Glenn R. Bisbing, III, divorced when their twin daughters were seven years old. Their judgment of divorce incorporated their settlement agreement that plaintiff would be the parent of primary residence and defendant would be the parent of alternate residence. It provided that neither party would permanently relocate out of state with the children without the prior written consent of the other. Several months after the parties' divorce, plaintiff advised defendant that she intended to marry the man whom she had been dating, a resident of Utah, and sought an order permitting her to move the children to that state.

The trial court applied the standard set forth in this Court's decision in Baures v. Lewis, 167 N.J. 91, 118-20 (2001). Under Baures, a parent with primary custody seeking to relocate children out of state over the objection of the other parent must demonstrate only that there is a good-faith reason for an interstate move and that the relocation "will not be inimical to the child's interests." Ibid. The trial court found that plaintiff sought to relocate for a good-faith reason and that the relocation would not be inimical to the interests of the

2

parties' daughters.  The trial court authorized the children's relocation to Utah, conditioned on an agreement allowing defendant scheduled visitation and regular communication with his daughters following the move.

Defendant appealed, and an Appellate Division panel reversed the trial court's judgment.  The panel held that if defendant were to make a showing on remand that plaintiff had negotiated the parties' custody agreement in bad faith, the trial court should not apply the "inimical to the child's interest" standard of Baures but should instead determine whether relocation would be in the best interests of the child.  The panel thus imposed on a plaintiff who has negotiated a custody arrangement in bad faith a higher burden of proof on the question of "cause" under N.J.S.A. 9:2-2 than the burden imposed under Baures.  We granted plaintiff's petition for certification.

We affirm and modify the Appellate Division's judgment.  We depart from the two-part test that Baures prescribed for a relocation application brought by a parent of primary residence. We apply the same standard to all interstate relocation disputes under N.J.S.A. 9:2-2 in which the parents share legal custody -- cases in which one parent is designated as the parent of primary residence and the other is designated as the parent of alternate residence and cases in which custody is equally shared.  In all

3

such disputes, the trial court should decide whether there is "cause" under N.J.S.A. 9:2-2 to authorize a child's relocation out of state by weighing the factors set forth in N.J.S.A. 9:2-4, and other relevant considerations, and determining whether the relocation is in the child's best interests.

Accordingly, we modify and affirm the Appellate Division's judgment and remand to the trial court for a plenary hearing to determine whether the proposed relocation of the parties' daughters to Utah is in the children's best interests.

I.

Plaintiff and defendant were married on August 27, 2005. Their twin daughters were born on November 17, 2006.

The family lived in Stanhope, near the parties' respective families in Pennsylvania. The children's grandmothers assisted with child care while plaintiff and defendant worked. Both parties were employed outside of the home during the marriage. Plaintiff commuted to New York City for her job, and defendant worked in New Jersey.

In 2013, after eight years of marriage, plaintiff and defendant separated. Without legal counsel, but with the assistance of a mediator, they agreed on the terms of the Marital Settlement Agreement (Agreement). They executed that Agreement on March 8, 2014.

4

The parties' Agreement provided that they would share "joint legal custody, with primary residential custody being with the mother, of the un-emancipated [c]hildren born of the marriage," and that plaintiff "shall be the custodial parent."[1] It stated that the children would stay with defendant every other weekend and one weeknight every other week. The parties agreed on a parenting schedule for holidays, acknowledged that they both were entitled to attend all of their children's events, and granted one another a right of first refusal if one parent were unable to care for the children during parenting time reserved for that parent.

---

[1] In this opinion, we use the terms "parent of primary residence" and "parent of alternate residence," rather than the terms "custodial parent" and "noncustodial parent," to describe the parties' respective parenting roles under their Agreement. See Fall & Romanowski, Child Custody, Protection & Support § 21:2-1(c) (2017) ("Use of the antithetical designations 'custodial' or 'noncustodial' parent and 'sole' or 'joint' physical custody should be avoided in favor of terms that more accurately describe the joint parenting arrangement that is preferred and typically exercised today."). The Child Support Guidelines use the term "parent of primary residence" to denote "[t]he parent with whom the child spends most of his or her overnight time," or "[i]f the time spent with each parent is equal . . . the parent with whom the child resides while attending school." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at www.gannlaw.com (2017); Fall & Romanowski, supra, Appendix IX-A at 1073-74. The Guidelines use the term "parent of alternate residence" to denote "the parent with whom the child resides when not living in the primary residence." Child Support Guidelines, Pressler & Verniero, supra, Appendix IX-A to R. 5:6A at www.gannlaw.com; Fall & Romanowski, supra, Appendix IX-A at 1073-74.

The Agreement included a provision addressing any future disputes regarding the relocation of the children:

Relocation. The parties agree that each shall inform the other with respect to any change of residence concerning himself or herself or the said minor Children for the period of time wherein any provision contained in this Agreement remains unfulfilled. The parties represent that they both will make every effort to remain in close proximity, within a fifteen (15) minute drive from the other. Neither party shall permanently relocate with the Children from the State of New Jersey without the prior written consent of the other. Neither parent shall relocate intrastate further than 20 miles from the other party. In the event either party relocates more than 20 miles from the other party, the parties agree to return to mediation to review the custody arrangement. In the event a job would necessitate a move, the parties agree to discuss this together and neither will make a unilateral decision. Neither party shall travel with the minor Children out of the United States without the prior written consent of the other party.

The parties hereby acknowledge that the Children's quality of life and style of life are provided equally by Husband and Wife.

The parties hereby acknowledge a direct causal connection between the frequency and duration of the Children's contact with both parties and the quality of the relationship of the Children and each party.

The parties hereby acknowledge that any proposed move that relocates the Children further away from either party may have a detrimental impact upon the frequency and duration of the contact between the Children and the non-moving party.

[(emphasis added).]

6

On April 16, 2014, the trial court entered a judgment of divorce, incorporating the terms of the parties' Agreement.

In the months that followed their divorce, plaintiff and defendant lived near one another and cooperated in the care of their children. Defendant was not restricted to the parenting time prescribed by the Agreement -- his alternate-weekend time with the children often extended until Monday morning, and the children frequently stayed overnight at his home after their scheduled weekday evening visit. The record indicates that during this initial post-judgment period, the parties sent one another cordial and cooperative e-mails regarding their children's schedules.

Plaintiff took primary responsibility for the girls' school and extracurricular activities. Defendant was also extensively involved in his daughters' lives. He served as their soccer coach, assisted with their ski team, and oversaw their activities at church. Because plaintiff departed for her job in New York City early in the morning, defendant went to her home several mornings each week to assist the children as they prepared for school.

Sometime prior to the entry of the judgment of divorce, plaintiff began dating Jake Fackrell, a Utah resident who operated a business in Idaho. The parties dispute whether plaintiff told defendant that her relationship with Fackrell was

serious before defendant agreed that plaintiff would be designated as the parent of primary residence. Plaintiff contends that she candidly discussed the fact that she was dating Fackrell with defendant prior to executing their Agreement; defendant asserts that plaintiff did not inform him that her relationship with Fackrell was serious until the divorce proceedings were concluded.

Effective July 1, 2014, plaintiff resigned from her employment. She later told the trial court that she left her job to spend more time with her daughters and that Fackrell had begun to support her financially. Plaintiff stated that she brought her daughters on trips to visit Fackrell and his children in Utah and that the children enjoyed their time in Utah.

According to defendant, following her resignation from her job, plaintiff restricted defendant's parenting time to the precise terms of the parties' Agreement and limited his family's access to the children.

On January 8, 2015, plaintiff told defendant that she intended to marry Fackrell and move to Utah. Plaintiff and Fackrell were married on June 29, 2015.

Plaintiff asked defendant to consent to the permanent relocation of the children to Utah. Defendant replied that plaintiff was free to move to Utah, but that the children must

8

remain in New Jersey with him. Plaintiff contends that following her request for permission to move the children, defendant refused to engage in meaningful conversations about her proposed move or the parties' parenting time.

Each party retained counsel to negotiate a settlement, but they were unable to resolve their dispute.

## II.

Plaintiff filed a motion pursuant to N.J.S.A. 9:2-2. She sought an order permitting her to permanently relocate the children to Utah or, in the alternative, authorizing their temporary move to Utah pending a plenary hearing. Plaintiff offered to negotiate a schedule for defendant's visitation and communication with the children after their move.

In support of her motion, plaintiff filed a certification stating that she planned to marry Fackrell and that his business interests precluded him from moving to New Jersey. She told the trial court that the children disliked their school in New Jersey and would have better educational opportunities in Utah. Plaintiff assured the court that after the children's departure for Utah defendant would still be afforded regular visitation with the children in New Jersey and Utah, as well as the opportunity to communicate with them on a daily basis by telephone and various forms of electronic communication. She argued that under the Baures standard, the relocation would not

9

be inimical to the children's interests because it would enable her to stay home with the children instead of returning to work and it would benefit the children to have a stay-at-home parent.

Defendant contended that plaintiff had negotiated the parties' Agreement in bad faith and sought the opportunity to prove that claim at a plenary hearing. Defendant argued that plaintiff secured his consent to her designation as parent of primary residence without informing him that she contemplated relocating to Utah in order to gain an advantage under the Baures standard. He asserted that the relocation would make it impossible for him to maintain a full and continuous relationship with his daughters and that electronic communications would not serve as a substitute for the time that he would spend with them were they to remain in New Jersey.

Applying the Baures test without conducting a plenary hearing, the trial court determined that plaintiff presented a good-faith reason for her planned relocation and that the move would not be inimical to the children's interests. The court acknowledged that the children's move to Utah would reduce the time spent with their father but suggested that a visitation plan would facilitate a strong, consistent relationship between defendant and his daughters.

The trial court granted plaintiff's application for an order permitting her to relocate the children to Utah,

10

conditioned on the parties' agreement on a visitation plan.  The

court denied defendant's motion to stay its order.  The parties

discussed a visitation plan but were unable to reach an

agreement on that issue.

Noting that it had directed both parties to propose

visitation plans and that defendant failed to submit a proposal,

the trial court decided on a visitation schedule substantially

based on plaintiff's proposal.[2]  The trial court entered a final

order permitting relocation of the children and establishing a

visitation schedule; the court declined to stay that order.

Plaintiff moved with the children to Utah and enrolled them

in an elementary school.

Defendant appealed the trial court's order.[3]  An Appellate

Division panel reversed the trial court's determination and

remanded to the trial court for a plenary hearing.  Bisbing v.

---

[2]  Under that schedule, the children would visit defendant in New
Jersey for seven weeks each summer; during their fall, winter
and spring school breaks; and every other Thanksgiving.
Defendant would have the right to visit the children in Utah for
five days per month on thirty days' notice to plaintiff, to
"have daily phone contact with [the] children as well as the
opportunity to FaceTime, Skype, or any other form of video
communication on a daily basis" and to read them "a bedtime
story once per week via video communication."

[3]  Prior to the trial court's entry of its order on relocation
and visitation, defendant sought to appeal the court's
determination on relocation as of right pursuant to Rule 2:2-
3(a).  His notice of appeal was dismissed because the trial
court had not entered a final order resolving all issues in the
matter.

11

Bisbing, 445 N.J. Super. 207, 220 (App. Div. 2016). The panel noted that the first inquiry under Baures -- the inquiry that determines the governing standard -- is whether the parents have agreed on a custodial relationship in which one parent has primary custody and the other serves a secondary custodial role. Id. at 215 (citing Baures, supra, 167 N.J. at 116-19, 122; O'Connor v. O'Connor, 349 N.J. Super. 381, 385 (App. Div. 2002). The Appellate Division panel then found that there was a genuine issue of material fact as to whether plaintiff negotiated the custody provisions of the Agreement in good faith, due to her ongoing relationship with Fackrell when the parties' Agreement was signed, her decision to leave her job shortly after the parties' divorce, and her application to relocate the children, which she filed only four months after the parties agreed that she would serve as the parent of primary residence. Id. at 216-17.

The panel ruled that if the trial court concluded that plaintiff had acted in bad faith, then plaintiff's motion for an order of relocation should be resolved under a best interests standard, instead of the more lenient "not . . . inimical to the child's interests" standard of Baures. Id. at 215. It held that if defendant failed to prove plaintiff's bad faith on remand, the trial court would then determine whether plaintiff proved a substantial and unanticipated change in circumstances

that would permit her to avoid the Agreement's relocation restriction. Id. at 218-19. The panel directed the trial court to apply the best interests of the child standard to the relocation request if plaintiff failed to prove a substantial and unanticipated change in circumstances. Id. at 219.

Following the Appellate Division's decision, plaintiff returned with her children to New Jersey. The trial court denied plaintiff's motion for a stay of the Appellate Division's order and her application for permission to temporarily relocate the children to Utah so that they could return to their school in that state. The trial court ordered that "neither party shall reside with the minor children more than 15 minutes away from the other parent," as set forth in the Agreement. With defendant's consent, plaintiff moved with the children to her parents' home in Pennsylvania, close to the border between New Jersey and Pennsylvania.

We granted plaintiff's petition for certification. 227 N.J. 262 (2016).[4] We also granted the application of the New Jersey State Bar Association to appear as amicus curiae.

---

[4] After her return with the parties' children to New Jersey, plaintiff did not send the children to school but initially home-schooled them and then hired a tutor. The trial court commenced a plenary hearing to determine how the children would be educated, but suspended that hearing following this Court's grant of certification on the issue of relocation. Both parties filed emergent applications to this Court seeking a determination of their dispute over the children's education.

13

III.

Plaintiff argues that the Appellate Division panel improperly created a new standard that is amorphous, overly broad, and unduly burdensome. She contends that the panel's decision will generate frivolous disputes over the relocation of children. Plaintiff maintains that the panel should have applied the Baures test to her application, notwithstanding the relocation provision in the parties' Agreement. She asserts that the Appellate Division's decision infringes on her constitutional right to travel because it prevents her from relocating to Utah.

Defendant urges the Court to enforce the terms of the parties' Agreement. He contends that the Appellate Division's standard is not new, that it will not increase litigation, and that it will eliminate a party's incentive to bargain for the status of parent of primary residence in anticipation of a planned relocation. Defendant notes that in N.J.S.A. 9:2-4 the Legislature expressed a strong public policy in favor of custody arrangements that promote a child's continuous interaction with both parents. Defendant states that a parent who shares joint legal custody of her children with another parent and agrees not

_____

We remanded the matter to the trial court, which ordered that the children attend a school in New Jersey that had merged with the school they attended prior to their move to Utah.

14

to relocate with the children without the other parent's consent has no constitutional right to relocate with the children.

Amicus curiae the New Jersey State Bar Association opposes the standard applied by the panel. It contends that a parent entering into a custody agreement does not waive his or her right to seek a judicial determination of custody unless that parent waives that right with clear and unmistakable language. The New Jersey State Bar Association urges the Court to affirm the panel's determination but modify its instructions to the trial court, so that the trial court will determine whether plaintiff waived her right to a judicial decision on the question of relocation, apply a best interests analysis if plaintiff did waive that right, and apply the Baures standard if she did not do so. At oral argument, the New Jersey State Bar Association stated that the Baures standard should be reviewed.

IV.

A.

This appeal arose from the trial court's application of N.J.S.A. 9:2-2, a provision addressing the custody of children after the separation or divorce of their parents. The custody statute was enacted to further New Jersey's public policy "to assure minor children of frequent and continuing contact with both parents after" separation or divorce. N.J.S.A. 9:2-4. The Legislature declared it to be "in the public interest to

15

encourage parents to share the rights and responsibilities of child rearing in order to effect this policy." Ibid. It provided that "[i]n any proceeding involving the custody of a minor child, the rights of both parents shall be equal." Ibid.

The custody statute affords to the Family Part a range of options to serve the needs of children and their families: "[j]oint custody of a minor child to both parents," "[s]ole custody to one parent with appropriate parenting time for the noncustodial parent," and "[a]ny other custody arrangement as the court may determine to be in the best interests of the child." N.J.S.A. 9:2-4(a), (b), (c). The Legislature prescribed a non-exclusive list of factors to guide a court charged to determine the custody arrangement that most effectively serves the child's best interests:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to

16

the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.

[N.J.S.A. 9:2-4(c).]

When "the parents cannot agree to a custody arrangement," the court may require each parent to submit a custody plan for its consideration. N.J.S.A. 9:2-4(e). When a court orders a custody arrangement that is not agreed to by both parents, it must identify on the record the specific factors that justify the arrangement. N.J.S.A. 9:2-4(f).

A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed by the court, is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4.[5] See Beck v. Beck, 86 N.J. 480, 496 n.8 (1981) (noting that party seeking change in custody arrangement must demonstrate "change of circumstances warranting modification"); Mimkon v. Ford, 66 N.J. 426, 438 (1975) (holding that custody orders are "subject to

_____

[5] In the context of an application to modify support obligations set forth in a settlement agreement, this Court has held that obligations created by parties' agreements entered into at the time of a divorce may be modified by a court upon a showing of changed circumstances, the same standard that governs modification of judicial orders addressing those issues. Lepis v. Lepis, 83 N.J. 139, 146 (1980).

17

modification at any time on showing of changed circumstances");

Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App.

Div.) ("A party seeking modification of a judgment,

incorporating a [settlement agreement] regarding custody or

visitation, must meet the burden of showing changed

circumstances and that the agreement is now not in the best

interests of a child."), certif. denied, 178 N.J. 34 (2003).

B.

The provision of the custody statute at the center of this

appeal is N.J.S.A. 9:2-2.  It requires a showing of "cause"

before a court will authorize the permanent removal of a child

to another state without the consent of both parents or, if the

child is of "suitable age" to decide, the consent of the child.

Specifically, the statute provides:

> When the Superior Court has jurisdiction over
> the custody and maintenance of the minor
> children of parents divorced, separated or
> living separate, and such children are natives
> of this State, or have resided five years
> within its limits, they shall not be removed
> out of its jurisdiction against their own
> consent, if of suitable age to signify the
> same, nor while under that age without the
> consent of both parents, unless the court,
> upon cause shown, shall otherwise order.  The
> court, upon application of any person [o]n
> behalf of such minors, may require such
> security and issue such writs and processes as
> shall be deemed proper to effect the purposes
> of this section.
>
> [N.J.S.A. 9:2-2.]

The Legislature required a showing of "cause" for an out-of-state relocation under N.J.S.A. 9:2-2 in order "to preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationship." Holder v. Polanski, 111 N.J. 344, 350 (1988) (quoting Cooper v. Cooper, 99 N.J. 42, 50 (1984)).

As this Court has observed, a court making the sensitive determination of "cause" must weigh "the custodial parent's interest in freedom of movement as qualified by his or her custodial obligation, the State's interest in protecting the best interests of the child, and the competing interests of the noncustodial parent." Ibid. (citing Cooper, supra, 99 N.J. at 56). When a parent of alternate residence objects to a proposal by the parent of primary residence to relocate children out of state, "there is a clash between the custodial parent's interest in self-determination and the noncustodial parent's interest in the companionship of the child." Baures, supra, 167 N.J. at 97. In the application of N.J.S.A. 9:2-2 to a relocation dispute, "[t]here is rarely an easy answer or even an entirely satisfactory one." Ibid.

The Court discussed the showing necessary for a finding of "cause" under N.J.S.A. 9:2-2 in two cases decided prior to Baures. In Cooper, supra, the Court held that a custodial parent seeking an order authorizing the relocation of children

19

must show "a real advantage to that parent in the move," and demonstrate that relocation would not be "inimical to the best interests of the children." 99 N.J. at 56. The Court modified that test in Holder, supra, ruling that a custodial parent demonstrates "cause" for purposes of N.J.S.A. 9:2-2 if he or she presents a "good-faith reason" for the relocation and demonstrates that it would not be "inimical to the best interests of the children or adversely affect the visitation rights of the noncustodial parent." 111 N.J. at 353.

In Baures, supra, the Court substantially eased the burden imposed on a custodial parent to demonstrate "cause" for a relocation under N.J.S.A. 9:2-2. 167 N.J. at 116-20. Under the standard prescribed in that case, a trial court's threshold determination is whether the objecting parent "shares physical custody either de facto or de jure or exercises the bulk of custodial responsibilities due to the incapacity of the custodial parent or by formal or informal agreement." Id. at 116. The Court held that in the shared-custody setting, the trial court should treat the relocation application as a motion for a change in custody "governed initially by a changed circumstances inquiry and ultimately by a simple best interests analysis." Ibid.

The Court held that if the trial court's threshold inquiry reveals that the parent seeking removal is the custodial parent,

20

that parent would establish "cause" under N.J.S.A. 9:2-2 if he or she proved "good faith and that the move will not be inimical to the child's interest." Id. at 116. The Court set forth a list of factors, "not all [of which] will be relevant and of equal weight in every case," to guide the determination of the "good faith" and "not . . . inimical to the child's interest" prongs of its new test. Id. at 116-17.

In Baures, the Court displaced the burden, imposed under Holder on the parent seeking relocation, to demonstrate that the move would not adversely affect the visitation rights of the noncustodial parent. Id. at 112 (citing Holder, supra, 111 N.J. at 353). The Court held that a trial court should not deny a motion for relocation merely because the modification would reduce the objecting parent's visitation but should bar relocation only if the move would have an "adverse effect," defined as "a change in visitation that will not allow the noncustodial parent to maintain his or her relationship with the child." Id. at 113.

The Court identified two developments in support of its alteration of the governing standard for N.J.S.A. 9:2-2 relocation applications. Id. at 106-09. First, the Court concluded that when a relocation benefits a "custodial parent," it will, as a general rule, similarly benefit the child. Id. at 106-08. The Court commented that "social science research links

21

a positive outcome for children of divorce with the welfare of the primary custodian and the stability and happiness within that newly formed post-divorce household," and that such research "has uniformly confirmed the simple principle that, in general, what is good for the custodial parent is good for the child." Id. at 106. For that conclusion, the Court relied on two studies: Judith S. Wallerstein & Tony J. Tanke, To Move or Not to Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce, 30 Fam. L.Q. 305, 311-12 (1996), and Marsha Kline et al., Children's Adjustment in Joint and Sole Physical Custody Families, 25 Developmental Psychol. 430, 431 (1989) (co-authored by Wallerstein). Baures, supra, 167 N.J. at 106. The Court also cited social science research for the principle that, "[a]lthough confidence that he or she is loved and supported by both parents is crucial to the child's well-being after a divorce, no particular visitation configuration is necessary to foster that belief." Id. at 107 (citing Frank F. Furstenberg, Jr. & Andrew J. Cherlin, Divided Families: What Happens to Children When Parents Part 72 (1991)).

Second, the Court invoked "the growing trend in the law easing restrictions on the custodial parent's right to relocate with the children and recognizing the identity of interest of the custodial parent and child." Baures, supra, 167 N.J. at

22

107-09 (discussing In re Marriage of Burgess, 913 P.2d 473, 481 (Cal. 1996); In re Marriage of Francis, 919 P.2d 776, 778, 779, 782, 784-85 (Colo. 1996) (en banc); Sefkow v. Sefkow, 427 N.W.2d 203, 214 (Minn. 1988) (en banc); Auge v. Auge, 334 N.W.2d 393, 399 (Minn. 1983) (en banc), superseded by statute, Minn. Stat. § 518.175; Tropea v. Tropea, 665 N.E.2d 145, 149-51 (N.Y. 1996); Fortin v. Fortin, 500 N.W.2d 229, 233 (S.D. 1993); Taylor v. Taylor, 849 S.W.2d 319, 332 (Tenn. 1993); Long v. Long, 381 N.W.2d 350, 352 (Wis. 1986)). In support of the custodial parent's "presumptive right" to move, the Court relied primarily on the California Supreme Court's decision in Burgess, in which Wallerstein appeared as amicus curiae to present her research. Id. at 108-09; Burgess, supra, 913 P.2d at 483 n.11. The Court characterized this authority as representing a "shift in relocation law" in favor of a custodial parent's decision to relocate out of state with his or her child. Ibid.

In the wake of Baures, trial courts routinely conduct a threshold determination of whether the parties' custody arrangement assigns to one parent a primary role or involves equally shared custody. See, e.g., Morgan v. Morgan, 205 N.J. 50, 66-67 (2011) (rejecting father's contention that notwithstanding terms of parties' agreement, parties' custody arrangement was in effect shared custody for purposes of threshold determination under Baures); Barblock v. Barblock, 383

23

N.J. Super. 114, 124-25 (App. Div. 2006) (rejecting father's claim that custody arrangement constituted shared custody due to parents' equal allocation of time with children); O'Connor, supra, 349 N.J. Super. at 385 (affirming trial court's determination that despite terms of parties' agreement, father assumed most custodial responsibilities and arrangement was in effect shared custody); Mamolen v. Mamolen, 346 N.J. Super. 493, 501-02 (App. Div. 2002) (reversing trial court's determination that custody arrangement amounted to shared custody based primarily on children's emotional relationship with father).  By virtue of the Baures standard, the parties' custody arrangement is the focus of the court's initial inquiry.

Because the parties' custodial arrangement is potentially dispositive when a court determines whether to authorize relocation under Baures, a collateral dispute regarding the parties' good faith in their custody negotiations may arise.  In Shea v. Shea, after the parent of primary residence sought an order authorizing her to relocate the child out of state, the parent of alternate residence accused her of "a subterfuge in that she planned to seek removal [of the child from New Jersey] shortly after the divorce was entered."  384 N.J. Super. 266, 268-70 (Ch. Div. 2005).  The parent of primary residence "denie[d] any manipulative purpose."  Id. at 270.  The court held that when a request for relocation closely follows a

24

settlement and a final judgment of divorce, and the party seeking to remove the child knew of "the material facts and circumstances forming the good faith reason for the removal request" when judgment was entered, the best interests standard would apply, whether or not "the parties had a true shared parenting arrangement." Id. at 271. The court observed that "[t]o rule otherwise could potentially encourage disingenuous settlements, encourage a party to use the Baures line of cases as a sword, or alternatively compel a cautious party to exhaustively litigate custody when not truly necessary." Ibid.

That principle was applied by the panel in this case, which held that if a remand hearing revealed that plaintiff manipulated the parties' negotiations to gain an advantage in an anticipated relocation dispute, "'fundamental fairness' requires the trial court to apply the 'best interests of the child' standard rather than the Baures standard." Bisbing, supra, 445 N.J. Super. at 217 (quoting Shea, supra, 384 N.J. Super. at 273-74).

C.

In that setting, we consider whether to retain the Baures standard as the benchmark for contested relocation determinations decided pursuant to N.J.S.A. 9:2-2.

"[W]e do not lightly alter one of our rulings" because consistent jurisprudence "provides stability and certainty to

25

the law." Pinto v. Spectrum Chems. & Lab. Prods., 200 N.J. 580, 598 (2010). The principle of stare decisis "carries such persuasive force that we have always required a departure from precedent to be supported by some special justification." Luchejko v. City of Hoboken, 207 N.J. 191, 208 (2011) (quoting State v. Brown, 190 N.J. 144, 157 (2007)). Such justification might be found "when experience teaches that a rule of law has not achieved its intended result." Pinto, supra, 200 N.J. at 598; cf. Olds v. Donnelly, 150 N.J. 424, 440 (1997) ("Candor compels that we acknowledge that the application of the entire controversy doctrine to legal-malpractice claims has not fulfilled our expectations.").

We find such justification for a departure from precedent in this case. In deciding Baures, the Court did not intend to diverge from the best interests of the child standard at the core of our custody statute, or to circumvent the legislative policy that parents have equal rights "[i]n any proceeding involving the custody of a minor child." N.J.S.A. 9:2-4. Instead, confronting a dispute that defies simple solutions, the Court sought guidance in social science research as to the best interests of the child, which at that time tethered the best interests of the child to the custodial parent's well-being. Baures, supra, 167 N.J. at 97, 106-09. The Court also discerned a trend in the law "significantly eas[ing] the burden on

26

custodial parents in removal cases." Id. at 107 (collecting cases). On those grounds, the Court replaced the best interests of the child test in relocation applications brought by parents with primary custody in favor of its two-pronged "good faith" and "not . . . inimical to the child" test. Id. at 118.

Wallerstein's social science research suggesting that the primary custodian's welfare is the paramount consideration has been both supported and called into question in publications by scholars in the field. See Richard A. Warshak, Social Science and Children's Best Interests in Relocation Cases: Burgess Revisited, 34 Fam. L.Q. 83, 83, 109-10 (2000) (criticizing amicus curiae brief submitted to California court by Wallerstein in Burgess because seven of ten studies cited in brief were authored by Wallerstein or other members of her research group and because brief did not recognize limits of social science); see also Sanford L. Braver, et al., Relocation of Children After Divorce and Children's Best Interests: New Evidence and Legal Considerations, 17 J. Fam. Psychol. 206, 210 (2003) ("[C]ourts ought to have better data than was available to the Burgess and Baures tribunals on the question of the impact of parental moves on the children of divorce."); Carol S. Bruch, Sound Research or Wishful Thinking in Child Custody Cases? Lessons from Relocation Law, 40 Fam. L.Q. 281, 314 (2006) (concluding that protecting child's relationship with his or her primary

27

caregiver and that person's decisions, including decision to relocate, serves child's best interests).  Other research has underscored the critical importance of a child's close relationship with his or her parent of alternate residence. See, e.g., Paul R. Amato & Joan G. Gilbreth, Nonresident Fathers and Children's Well-Being:  A Meta-Analysis, 61 J. Marriage & Fam. 557, 559-65 (1999) (concluding that data from sixty-three studies indicates that child's "feelings of closeness" with and "authoritative parenting" by his or her "nonresident father" are associated with child's academic achievement and well-being); K. Alison Clarke-Stewart & Craig Hayward, Advantages of Father Custody and Contact for the Psychological Well-Being of School-Age Children, 17 J. Applied Developmental Psychol. 239, 260 (1996) (recounting study's finding that "parentlike contact with the noncustodial parent had the additional advantage of being associated with better relations with both parents, which to some extent was responsible for children's better well-being").

In short, social scientists who have studied the impact of relocation on children following divorce have not reached a consensus.  Instead, the vigorous scholarly debate reveals that relocation may affect children in many different ways. The Court's conclusion in Baures, supra, that in general, "what is good for the custodial parent is good for the child" is no doubt correct with regard to some families following a divorce.

167 N.J. at 106. As the social science literature reflects, however, that statement is not universally true; a relocation far away from a parent may have a significant adverse effect on a child. See Braver, et al., supra, 17 J. Fam. Psychol. at 210 ("We find a preponderance of negative effects associated with parental moves by mother or father, with or without the child, as compared with divorced families in which neither parent moved away."); Christine Winquist Nord, et al., Fathers' Involvement in Their Children's Schools, Nat'l Ctr. Educ. Statistics (Sept. 1997), https://nces.ed.gov/pubs98/fathers/ (reporting on research demonstrating importance of active participation in children's school by "nonresident fathers").

Moreover, the progression in the law toward recognition of a parent of primary residence's presumptive right to relocate with children, anticipated by this Court in Baures, has not materialized. See Baures, supra, 167 N.J. at 109 (identifying "growing trend" in case law against restrictions on custodial parent's right to relocate with children and recognizing that parent's identity of interest with child). For instance, in In re Marriage of Ciesluk, 113 P.3d 135, 137 (Colo. 2005) (en banc), the Colorado Supreme Court repudiated the test it adopted in Francis, supra, 919 P.2d at 784-85, in light of a legislative enactment that eliminated the presumption in favor of the majority time parent seeking to relocate. Francis, supra, 919

29

P.2d at 784-85, was a leading case on which this Court relied in Baures, supra, 167 N.J. at 109. The Supreme Court of California, whose opinion in Burgess was also relied on in Baures, has revisited the standard of Burgess and a state statute codifying Burgess, Cal. Fam. Code § 7501, and has reaffirmed its earlier rejection of "bright line rules in this area" in favor of an evaluation of each case "on its own unique facts." In re Marriage of LaMusga, 88 P.3d 81, 91 (Cal. 2004).

Today, the majority of states, either by statute or by case law, impose a best interests test when considering a relocation application filed by a parent with primary custody or custody for the majority of the child's time; some have recently abandoned a presumption in favor of the parent of primary residence.[6] A minority of jurisdictions apply a standard that

_____

[6] Ariz. Rev. Stat. Ann. § 25-408(A),(G) (providing that if both parents are entitled to joint legal-decision making or parenting time, court shall determine whether to allow parent to relocate child in accordance with child's best interests); Conn. Gen. Stat. § 46b-56d(a) (requiring that when relocation impacts parenting plan, relocating parent must prove relocation is for legitimate purpose, proposed location is reasonable, and relocation is in best interests of child); 750 Ill. Comp. Stat. 5/609.2(b),(g) (providing that relocation by parent with majority or equal parenting time requires court to modify parenting plan or allocation in accordance with child's best interests); Ohio Rev. Code Ann. § 3109.051(G)(1) (providing that if residential parent moves to residence not specified in decree, court schedules hearing to determine whether it is in best interest of child to revise parenting time schedule); 23 Pa. Cons. Stat. § 5337(h) (prescribing best interests of child factors governing relocation decision); Utah Code Ann. § 30-3-37(4) (requiring court to decide whether relocation of custodian

30

is in best interests of child); Chesser-Witmer v. Chesser, 117 P.3d 711, 717 (Alaska 2005) (holding that if out-of-state move by custodian or joint custodian requires modification of custody arrangement, modification must be in best interests of child); Ciesluk, supra, 113 P.3d at 137 (recognizing legislative elimination of presumption and applying best interests standard under Colorado law); Fredman v. Fredman, 960 So. 2d 52, 55-56 (Fla. Dist. Ct. App.) (noting that legislature overruled court-created presumption in favor of primary residential parent's relocation by enacting statute which provides that there is no presumption in favor of or against request to relocate), review denied, 968 So. 2d 556 (2007), cert. denied, 552 U.S. 1243, 128 S. Ct. 1481, 170 L. Ed. 2d 297 (2008); Bodne v. Bodne, 588 S.E.2d 728, 729 (Ga. 2003) (requiring courts to consider best interests of child and overruling presumption that custodial parent has prima facie right to retain custody); Fisher v. Fisher, 137 P.3d 355, 365 (Haw. 2006) (rejecting argument for "preference and priority" for "primary caretaker and stability in residential and educational arrangements" in favor of best interests standard); Bartosz v. Jones, 197 P.3d 310, 315 (Idaho 2008) ("When a move would violate an existing custody arrangement, the parent seeking permission to relocate with the child has the burden of proving that the relocation is in the best interest of the child."); In re Marriage of Whipp, 962 P.2d 1058, 1059 (Kan. 1998) (stating that for relocations that materially change circumstances to justify change in custody, court must determine whether change is in child's best interests); Gray v. Gray, 65 So. 3d 1247, 1255 (La. 2011) (noting that La. Rev. Stat. § 9:355.1 to –.17 represents "policy determination that . . . parent seeking to relocate the principal residence of the child must prove not only that the request for relocation is made in good faith, but also that the relocation is in the best interest of the child"); Brasier v. Preble, 82 A.3d 841, 844-45 (Me. 2013) (holding that relocation that changes circumstances may require modification of custody arrangement in accordance with child's best interests); Braun v. Headley, 750 A.2d 624, 636 (Md. Ct. Spec. App.) (applying best interests of child standard to relocation that materially changes circumstances), cert. denied, 755 A.2d 1139 (Md. 2000), cert. denied, 531 U.S. 1191, 121 S. Ct. 1190, 149 L. Ed. 2d 106 (2001); In re Marriage of Goldman, 748 N.W.2d 279, 288 (Minn. 2008) (en banc) (Anderson, Paul H., J., dissenting) (noting that legislature amended Minn. Stat. § 518.175 and replaced "presumption in favor of the custodial parent" with best interests of child standard); Pasternak v. Pasternak, 467 S.W.3d 264, 269 (Mo. 2015) (en banc) (holding that under Mo. Rev. Stat.

31

expressly or implicitly favors the relocation decision of the parent with primary or majority-time custody; some but not all of those jurisdictions characterize that preference as a

§ 452.377, change in principal residence requires court to determine whether relocation is in good faith and best interests of child); In re Marriage of Robison, 53 P.3d 1279, 1283 (Mont. 2002) (noting Montana legislature eliminated presumption in favor of primary caretaker in its best-interests-of-child statute, which applies to relocation determinations that warrant change in parenting plan); Schrag v. Spear, 858 N.W.2d 865, 874 (Neb. 2015) (holding that custodial parent must demonstrate he or she has legitimate reason for leaving state and that it is in child's best interests to continue living with him or her in new location); Jaramillo v. Jaramillo, 823 P.2d 299, 307-09 (N.M. 1991) (rejecting use of presumptions and holding instead that custody arrangement must be modified to serve best interests of child if relocation changes circumstances); Tropea, supra, 665 N.E.2d at 150 (rejecting presumptions and holding that relocation request must be considered in totality of circumstances "with predominant emphasis . . . placed on what outcome is most likely to serve the best interests of the child"); In re Marriage of Colson, 51 P.3d 607, 612-14 (Or. Ct. App. 2002) (noting that if move constitutes change of circumstances, modification to custody arrangement still requires showing that modification serves children's best interests); Valkoun v. Frizzle, 973 A.2d 566, 576-77 (R.I. 2009) (stating that relocating custodial parent must prove legitimate, not necessarily compelling, reason to move, and relocation is in child's best interests); Latimer v. Farmer, 602 S.E.2d 32, 34-35 (S.C. 2004) (adopting best interests standard instead of previous presumption against relocation); Falanga v. Boylan, 123 A.3d 811, 814 (Vt. 2015) (stating that relocation that amounts to changed circumstances necessitates reexamination of child's best interests); Wheeler v. Wheeler, 591 S.E.2d 698, 701 (Va. Ct. App. 2004) (requiring material change in circumstances and best interests of child to modify decree permitting custodial parent to relocate); Arnott v. Arnott, 293 P.3d 440, 457-58 (Wyo. 2012) (overruling former presumption in favor of custodial parent and holding that relocation that results in change of circumstances warrants determination of proper custodial arrangement that is in best interests of child).

"presumption."[7]  As experience has proven, the standard adopted

in Baures did not represent a lasting trend in the law.

---

[7]  See 43 Okla. Stat. § 112.3(K) (relocating person must prove relocation is in good faith and, if burden is met, then nonrelocating person must show relocation is not in best interest of child); Wis. Stat. § 767.481(3)(a)(2)(a) ("There is a rebuttable presumption that continuing the current allocation of decision making under a legal custody order or continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child."); Singletary v. Singletary, 431 S.W.3d 234, 239-40 (Ark. 2013) (recognizing presumption in favor of relocation for parents with sole or primary custody and noting that guiding principle in making relocation decision is best interests of child); In re Marriage of Hoffman, 867 N.W.2d 26, 33 (Iowa 2015) (conferring final authority on parent with physical care of child to decide location of child's residence but noting that such authority "is not unlimited" and is "subject to judicial review based on . . . best interests of the child[]"); In re Heinrich & Curotto, 7 A.3d 1158, 1163 (N.H. 2010) (noting that under New Hampshire relocation statute, relocating parent has initial burden of demonstrating that relocation is for legitimate purpose and is reasonable and burden then shifts to opposing parent to prove relocation is not in child's best interests); Brosnan v. Brosnan, 840 N.W.2d 240, 247 (S.D. 2013) (noting relocation statute provides that "parent entitled to the custody of a child has the right to change his residence, subject to the power of the circuit court to restrain a removal which would prejudice the rights or welfare of the child"); Aragon v. Aragon, 513 S.W.3d 447, 459-60 (Tenn. 2017) (interpreting Tenn. Code Ann. § 36-6-108 to provide that parent spending greater amount of time with child is permitted to relocate with child unless court finds move does not have reasonable purpose, move would pose threat of harm to child, or motive for move is vindictive); In re Marriage of Horner, 93 P.3d 124, 130 (Wash. 2004) (noting that relocation statute "establishes a rebuttable presumption that the relocation of the child will be allowed" (quoting Osborne v. Osborne (in re Osborne), 79 P.3d 465, 471 (Wash. Ct. App. 2003))); Storrie v. Simmons, 693 S.E.2d 70, 76 (W. Va. 2010) (per curiam) (authorizing relocation on showing that relocation that changes circumstances is in good faith, for a legitimate purpose, and to location that is reasonable in light of purpose).

Moreover, the threshold determination mandated by Baures may engender unnecessary disputes between parents over the designation of the parent of primary residence and accusations that a parent sought that designation in bad faith, anticipating a relocation. Our custody statute clearly envisions that a custody arrangement will serve a paramount purpose: the promotion of the child's best interests. N.J.S.A. 9:2-4. The parties and the court should select the parent of primary residence based on that parent's capacity to meet the needs of the child. Ibid. If a designation as the parent of primary residence will determine the result of a relocation dispute, parties may be motivated to contest that designation even if one parent is clearly in a better position to serve that primary role. As this case illustrates, the advantage afforded to a parent of primary residence in a relocation conflict may raise divisive accusations of bad faith after custody negotiations conclude. See Bisbing, supra, 445 N.J. Super. at 217; see also Shea, supra, 384 N.J. Super. at 271-72. In short, by tethering the relocation standard to one party's status as the parent of primary residence, the Baures standard may generate unnecessary disputes regarding that designation.

Our decision to replace the Baures test with a best interests analysis is consonant with our opinion in Emma v. Evans, 215 N.J. 197, 216-23 (2013). In Emma, we addressed the

34

standard applied when a parent seeks to change the child's surname, and the other parent objects to the renaming of the child. Ibid. Prior to our opinion in Emma, courts applied a rebuttable presumption that "in contested cases the surname selected by the custodial parent -- the parent primarily charged with making custodial decisions in the child's best interest -- shall be presumed to be consistent with that child's best interests." Gubernat v. Deremer, 140 N.J. 120, 123 (1995). In Emma, supra, we abandoned that presumption in favor of a standard based on the best interests of the child, with the parents "on equal footing" in that inquiry. 215 N.J. at 221-22.

Accordingly, we do not consider the Baures standard to be compelled by social science or grounded in legal authority today, as the Court anticipated that it would be when it decided that case. We recognize a "special justification" in this case to abandon that standard. See Luchejko, supra, 207 N.J. at 208-09; Pinto, supra, 200 N.J. at 598.

D.

In place of the Baures standard, courts should conduct a best interests analysis to determine "cause" under N.J.S.A. 9:2-2 in all contested relocation disputes in which the parents share legal custody -- whether the custody arrangement designates a parent of primary residence and a parent of alternate residence, or provides for equally shared custody.

35

That standard comports with our custody statute, in which the Legislature unequivocally declared that the rights of parents are to be equally respected in custody determinations and stated that custody arrangements must serve the best interests of the child.  N.J.S.A. 9:2-4.  A number of the statutory best interests factors will be directly relevant in typical relocation decisions and additional factors not set forth in the statute may also be considered in a given case.  Ibid.

In the best interests analysis, the parent of primary residence may have important insights about the arrangement that will most effectively serve the child.  The parent of alternate residence may similarly offer significant information about the child.  The views of other adults with close relationships with the child may also inform the court's decision.  See Emma, supra, 215 N.J. at 216-23 (holding that in best interests analysis regarding child's name, court should consider both parents' views and views of other adults close to child).  The trial court may consider other evidence, including documentary evidence, interviews with the children at the court's discretion, and expert testimony.  See R. 5:8-6 ("As part of the custody hearing, the court may on its own motion or at the request of a litigant conduct an in camera interview with the child(ren)."); Pressler & Verniero, supra, comment 1.4.5 on R. 5:8-6 (stating that in custody hearings, "[i]t is clear that the

36

parties must have an appropriate opportunity for experts'
assistance"); <u>Kinsella v. Kinsella</u>, 150 <u>N.J.</u> 276, 318 (1997)
("In implementing the 'best-interest-of-the child' standard,
courts rely heavily on the expertise of psychologists and other
mental health professionals.").

E.

We briefly address plaintiff's contention, unsupported by
citation to federal or state authority, that the Appellate
Division's application of <u>N.J.S.A.</u> 9:2-2 infringes on her due
process right to travel out of state.

We do not view <u>N.J.S.A.</u> 9:2-2's constraints on a parent's
authority to relocate children living in the state to a
different state, over the other parent's objection, to infringe
on the relocating parent's constitutional right to interstate
travel.  The United States Supreme Court has defined the right
to travel as

> the right of a citizen of one State to enter
> and to leave another State, the right to be
> treated as a welcome visitor rather than an
> unfriendly alien when temporarily present in
> the second State, and, for those travelers who
> elect to become permanent residents, the right
> to be treated like other citizens of that
> State.
>
> [<u>Saenz v. Roe</u>, 526 <u>U.S.</u> 489, 500, 119 <u>S. Ct.</u>
> 1518, 1525, 143 <u>L. Ed.</u> 2d 689, 702 (1999); <u>see
> also</u> <u>Mem'l Hosp. v. Maricopa County</u>, 415 <u>U.S.</u>
> 250, 263, 94 <u>S. Ct.</u> 1076, 1085, 39 <u>L. Ed.</u> 2d
> 306, 318 (1974) (discussing right to travel).]

N.J.S.A. 9:2-2 does not infringe upon any of those rights. The statute places no constraint on plaintiff's right to travel. It does, however, place a limitation on her claimed right to permanently relocate her children from our State without the court's approval when another parent's rights and the child's best interests are at stake.

As this Court noted in Holder, supra, in which we declined to reach a parent's constitutional challenge to N.J.S.A. 9:2-2, "[s]hort of an adverse effect on the noncustodial parent's visitation rights or other aspects of a child's best interests, the custodial parent should enjoy the same freedom of movement as the noncustodial parent." 111 N.J. at 352 (collecting cases). The Constitution, however, "does not prohibit a state from imposing some legal consequences on a person's entering or leaving the jurisdiction." Murnane v. Murnane, 229 N.J. Super. 520, 528 (App. Div. 1989) (citing Sosna v. Iowa, 419 U.S. 393, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975); Starns v. Malkerson, 326 F. Supp. 234 (D. Minn. 1970), aff'd, 401 U.S. 985, 91 S. Ct. 553, 42 L. Ed. 2d 527 (1971)). A court that has determined "custody on the assumption of residence within New Jersey so as to protect, among other things, the visitation rights of the noncustodial parent and the interest of the child in maintaining a close relationship with that parent" has the authority to constrain a parent from altering custody without violating that

38

parent's due process right to travel.  Ibid.; see also Holder, supra, 111 N.J. at 352.

Any limitation on plaintiff's travel imposed by the trial court pursuant to N.J.S.A. 9:2-2 would relate solely to her intention to move her children to Utah, a departure from the custody arrangement that the parties agreed upon and the court ordered.  Such a limitation would not violate plaintiff's due process right to interstate travel.  Murnane, supra, 229 N.J. Super. at 528.

V.

Our holding compels a remand of this matter to the trial court for a plenary hearing to determine whether the custody arrangement set forth in the parties' Agreement should be modified to permit the relocation of the parties' daughters to Utah.

We do not agree with defendant's assertion that by consenting to the interstate relocation provision of the parties' Agreement, plaintiff waived her right to a judicial determination of her relocation application under N.J.S.A. 9:2-2.  That Agreement, however, is significant to the court's determination on remand.  Because the custody arrangement was agreed to and incorporated in the trial court's judgment, plaintiff is required to demonstrate changed circumstances to

justify its modification. Quinn v. Quinn, 225 N.J. 34, 48-49 (2016); Lepis, supra, 83 N.J. at 147.

In addition, because the modification of custody sought by plaintiff is a permanent relocation governed by N.J.S.A. 9:2-2, plaintiff must demonstrate that there is "cause" for an order authorizing such relocation. In that inquiry, "cause" should be determined by a best interests analysis in which the court will consider all relevant factors set forth in N.J.S.A. 9:2-4(c), supplemented by other factors as appropriate. On remand, the court should consider, under that analysis, the parties' Agreement, in which the parties acknowledged that they equally provide their daughters' "quality of life and style of life," and "acknowledge[d] a direct causal connection between the frequency and duration" of their children's contact with both parents, and "the quality of the relationship" between the children and each parent. The trial court should also consider other evidence presented by the parties.

Because the best interests standard applies to the determination of "cause" under N.J.S.A. 9:2-2 notwithstanding plaintiff's designation as the parent of primary residence, the question whether plaintiff anticipated a relocation when she negotiated for that designation does not determine the governing standard. In the remand hearing, the court need not decide

whether plaintiff negotiated the parties' Agreement in bad faith.

VI.

The judgment of the Appellate Division is modified and affirmed, and the matter is remanded to the trial court for proceedings in accordance with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.

41