# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the Internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0503-20

X.L.S.,[1]

    Plaintiff-Appellant,

v.

E.R., JR.,

    Defendant-Respondent.

_____

Submitted September 29, 2021 – Decided October 29, 2021

Before Judges Whipple, Geiger, and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FD-16-1866-11.

Townsend, Tomaio & Newmark, LLC, attorneys for appellant (Paul H. Townsend, of counsel and on the briefs; Kevin W. Ku, on the brief).

Ronda Casson Cotroneo, attorney for respondent.

PER CURIAM

---

[1] We use initials to protect the victim of domestic violence. See R. 1:38-3(d)(10).

Plaintiff appeals from the Family Part's September 9, 2020 order denying her motion to relocate to California with her then ten-year-old daughter. We reverse and remand for further proceedings.

Plaintiff and defendant started dating in 2007 and living together in 2009. There is a history of domestic violence. On June 5, 2009, the court issued a Temporary Restraining Order (TRO) alleging defendant held plaintiff against her will, hit her, and jumped on her stomach. Plaintiff and the child lived with defendant for less than a year after the child was born, and plaintiff has been the primary residential parent since then.

On June 26, 2011, the court issued another TRO against defendant when he held plaintiff down and took her phone. The court issued a Final Restraining Order (FRO) on July 5, 2011 and ordered defendant to pay child support. The court issued an amended FRO on June 20, 2012, to include defendant's parenting time. The following year on July 18, 2013, the court entered another amended FRO, which expanded defendant's parenting time during alternating weekend overnights and weekday dinners.

The parties generally agree that they had been following the visitation time in the July 2013 amended FRO. On many occasions, defendant had additional time with the child, and the parties compromised to share holidays.

2

But during other times, plaintiff occasionally declined to allow defendant to pick up the child, saying the child did not want to go with him.

Defendant lives in Paterson in a multi-family house downstairs from his father. Defendant's mother and sister live nearby. Defendant's family saw the child often. During the time of the relevant hearings, defendant was unemployed due to COVID-19 furloughs, but was seeking a driving position with Panera Bread.

A July 13, 2011 order entered in the non-dissolution docket ordered defendant to pay $65 in weekly child support, but did not address custody. On March 30, 2017, the court ordered defendant to pay $93 per week to account for $68 in child support and to recoup the $1,479.83 in total arrears. Plaintiff has been providing medical coverage for the child except when Medicaid provided coverage during periods when plaintiff was unemployed. Medicaid sought reimbursement of medical expenses from the defendant. Child support arrears totaled $3,002.40 by July 24, 2018, $5,402.62 by January 8, 2019, and $6,470.62 by January 16, 2019. By June 24, 2020, arrears totaled $2,658.62, and by July 24, 2020, arrears totaled $2,558.62. With its September 9 written order of the August 27 hearing, the court found $2,148.62 in arrears.

A-0503-20

Plaintiff had been living in Garfield with the child. Before her husband, Ethan Ruiz, left for the military, he lived with plaintiff for a few months. On June 15, 2020, plaintiff moved for modification of the July 2013 amended FRO, requesting permanent residence relocation to California where Ruiz is now stationed in the military. On August 18, 2020, defendant filed a cross-motion seeking a change in custody if relocation is denied but plaintiff moves to California, leaving the child with defendant in New Jersey.

Plaintiff married Ruiz on May 28, 2020, and asserts she told defendant of her plans to move out of the state in general terms during the previous year, and, in May 2020 when preparing for the court hearing. Defendant denied speaking to plaintiff about moving but acknowledges that the child told him plaintiff was in California when plaintiff left the child with defendant for two weeks. Defendant concedes that plaintiff did offer to discuss the matter after filing the motion but before coming to court, but that he had already hired legal counsel and had been before a judge, so he did not think he should be speaking with plaintiff at that time.

After adjournments, the court began virtual hearings to consider the best interests of the child in late August 2020. Ruiz testified about the military benefits system, his relationship with the child, and his responsibilities to her.

A-0503-20

Ruiz initiated the process to receive financial allotments, but plaintiff and the child had a limited number of days to collect their military identifications to use the facilities and health benefits. With these allotments and the Ruizs' income, plaintiff estimated a $5,049.81 monthly income, even without her accepting a job in California. Plaintiff had been making $49,000 per year in New Jersey but could have made $55,000 per year in a California job.

Plaintiff also testified how services in California can meet the child's needs. The child started weekly therapy in New Jersey after a November 2019 domestic violence incident between defendant and his girlfriend. Plaintiff testified that the child would continue her therapy in California.

Prior to the hearing but after plaintiff filed her motion, the therapist made a referral to the Division of Child Protection and Permanency (Division) after the child expressed some concerning behavior with her father. The therapist referred potential manipulation and emotional guilting of the child. By the hearing, the Division had not completed their investigation, but the court made no efforts on the record to further inquire into the Division's investigation. During this time, the child personally contacted defendant for the first time to say she did not want to go with him during his parenting time.

A-0503-20

To meet the child's educational needs, plaintiff testified she communicated with the San Diego school principal and child study team and confirmed that the child would continue with her Individualized Education Program (IEP). The child would have access to extracurricular activities through military resources or plaintiff would pay for activities in the area where they would live.

During the hearings, the Family Part judge requested that plaintiff propose a specific schedule in writing for the next session, so the court could consider how the parents could maintain their relationship with the child. Plaintiff offered for defendant to have the child for weekly virtual meetings, summers, and school breaks and to share in transportation costs. Before closing the first day of the hearing, the trial court sent plaintiff and defendant's counsel into a virtual conference room to confer. The parties discussed potential ideas but did not reach an agreement.

When scheduling the proceedings and testimony, the court repeatedly referenced the speed at which he hoped to conduct these. He stated, "[T]here seems to be a real good-faith basis for the request, and the next step is the hearing. And I am simply trying to explore whether that hearing is necessary" because his next full available session was not until the end of September. The

6

court scheduled "a four-hour session, total to this matter, over two days" hoping to "conclude the presentation and the father's presentation and give [the court] enough time to think about it and make a decision in that time." But the court noted, "let's make every effort to conclude it on Tuesday in the two hours that we have available to us." On Tuesday when plaintiff testified about her finances, the court noted "let us try to get through this quickly." The proceedings continued into Thursday.

On August 25th, plaintiff asked the court to speak with the child to clarify the defendant's home situation. The court responded that its "first concern is whether . . . the child is of sufficient age to make rational judgments and choices . . . and preferences," but that the court has not generally "found it appropriate to let a child [eleven] years of age testify." The court thought it was "not appropriate for a whole host of reasons, including putting the child inside the contest between her parents . . . ." The court did, however, offer to read a letter from the child if she wanted to be heard, but, did not "think that interviewing [the child] for the purpose of obtaining a position that [the court] would then give weight to" would be valuable to the court's decision.

During the court's factual findings for best interests, the court explained that it did not read the letter or interview the child as a witness because "still at

7

age [eleven, the court doesn't] find that [the child] has that sufficient age and capacity to reason . . . to form an intelligent reasoned decision."  Thus, the judge noted in the analysis of each factor that the court did not consider the preference of the child.  The August 27, 2020 decision explained that a custody determination would be in plaintiff's favor but denied relocation.  The trial judge did not consider defendant's cross-motion for custody.

The court discussed each N.J.S.A. 9:2-4 factor then concluded with:

> So, I have three of the factors that weigh in favor of staying.  I have two of the factors that weigh in favor of relocation, and the factor that I think weighs most heavily is the interaction of the child with the family that exists here and the related needs of the child.
>
> So, for those reasons, and based upon those findings, and based upon this court's reading of Bisbing,[2] and guidance as provided there, the court already decline[d] to grant the mother permission to move from the State of New Jersey.
>
> So that will conclude the court's decision.  I apologize to the court staff who are here now.  The time is 4:42. I was hopeful that we would not have to come to this decision.

The court finalized its decision, entering an order on September 9, 2020.

This appeal followed.

---

[2] Bisbing v. Bisbing, 230 N.J. 309 (2017).

8

On appeal, plaintiff argues the court misapplied the relocation factors under N.J.S.A. 9:2-4 and erred in not interviewing the child. We agree.

Our standard of review is such that we will not disturb a trial judge's factual findings when they are "supported by adequate, substantial and credible evidence." Rova Farms Resort v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974). We only "disturb the factual findings and legal conclusions of the trial judge [when we] are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Fagliarone v. North Bergen Twp., 78 N.J. Super. 154, 155 (App. Div. 1963)).

Family courts maintain "special jurisdiction and expertise in family matters," so "appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). "Deference is especially appropriate 'when evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017).

9

I.

Courts should apply the best interests analysis to determine "cause" under N.J.S.A. 9:2-4 in all relocation disputes where parents share legal custody. Bisbing, 230 N.J. at 335. N.J.S.A. 9:2-4(c) provides the statutory factors for a best interests analysis, requiring that:

> [i]n making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.

Failure to conduct an appropriate best interests analysis and application of incorrect law both constitute reversible error. A.J. v. R.J., 461 N.J. Super.

173, 182-83 (App. Div. 2019).  Here, many of the factors, are adequately supported by the record.  However, others are not.

The court found: "[p]arent's ability to communicate, cooperate and agree to matters relating to the child.  Each party appears to be willing to engage in communication, cooperation . . . ."  And "both parties have indicated the desire to have custody. . . . [creating] a neutral factor."  The court found "extent and quality of time spent with the child prior to and subsequent separation . . . to be of equally high level" and a neutral factor.  The trial judge did not think either parents' employment responsibilities, when they are employed, would "keep[] the parent out of the house any more than the other."

Although the court undertook a technical application of and identified weight for each factor, it failed to develop factual findings for important factors where the court was presented with disputed or missing evidence, notably, for the child's therapy; her alleged fear of defendant; defendant's inability to provide financial support historically and in the future; and his plans to provide support if the relocation is denied but plaintiff moves and leaves the child in New Jersey with defendant.  Moreover, the court accorded improper emphasis to the extended family relationships and abused its discretion in failing to interview the child.

A-0503-20

It is significant, although not necessarily fatal, that the court did not consider the child's preference. While the court expressed an opinion about the value of an eleven-year old's potential testimony, it provided no explanation for not interviewing the child about facts in dispute and her relationships with her parents and their families to complete the record. The court found other neutral factors without full and appropriate findings, making the conclusions unsupported by credible evidence.

The court found either school district was able to meet the child's needs but then focused its concern elsewhere:

> The needs of the child. Again, here we have a strong family network. We have the relationship with the school. We have familiarity with the community, as opposed to a move to California where there is no family, there is no network. And mom's only response is to be able to say this is a very stable, very social child and she will easily make friends. No network of friends developed after a move will possibly replace the network of family that she has here. So I cannot imagine that that move would serve her.

Then, the judge stated that "both schools appear to be capable" to manage the child's IEP, so quality and continuity of the child's education "seems to be . . . a neutral factor." Under the factor for parental fitness, the court found:

> The parents, now, again, I don't have a professional who has assessed the parenting skills of these two parents. I have dad who is said to be punching on his

girlfriend in the presence of the child. I have a dad who is a domestic abuser under the domestic violence restraining order. All of that is highly concerning.

On the other hand, specific concern[s] about the mother's treatment of the child, in relationship with the child, I do have serious questions about the path she chose to get to this moment. It makes me wonder about her judgment in terms of these very difficult parenting issues. So, I have concerns on both sides, I find that to be a neutral factor.

Under the factor for stability of the home, the trial court found:

Well, at this point neutralizing, neutralizing the fact that mom has left her lease, neutralizing the fact that mom is said to be staying in a room at a friend's house. I am not counting that against her because she made a decision I think hastily. It appears that both the father's home environment and the mother's home environment would not be enhanced in any respect by the move, and therefore, the child['s] experience of a stable home environment would not be enhanced by the move.

Notably, the trial judge did not address other needs or stability, such as the child's therapy, parties' financial resources, or medical insurance, despite repeated evidence of defendant's failure to provide financial support and insurance for the child.

The consideration of the child's welfare means the "safety, happiness, physical, mental and moral welfare of the child." Sheehan v. Sheehan, 51 N.J. Super. 276, 291 (App. Div. 1958) (quoting Fantony v. Fantony, 21 N.J. 525, 536

13

(1956)).  This "concerns more than the physical well-being resulting from the furnishing of adequate food, clothing and shelter.  It concerns, [i]nter alia, the spiritual and social welfare of the child."  Id. at 292.

The court did not consider whether defendant could provide for the child's needs, be a fit parent, or provide a stable home environment.  Defendant, at the time of the hearings, was unemployed due to COVID-19 furloughs, but pursuing an application process for a driving position with Panera Bread.  He had not and was not providing the child with medical insurance.  Despite defendant's lack of income, he wanted to enroll her in a private school, believing that the annual tuition would be $6,450, without explaining how he would pay for it.  When asked approximately how much he would make per year when working, he replied that he made "700 over the books, so he wouldn't have to file taxes."  He could not give a net income of what he would make after taxes while making $700 weekly.  The court did not address the child support arrears.  The court did not consider how defendant will provide for the child's needs and stability without a job and with thousands of dollars in arrears.

While the court made some references to the fact that the child was in therapy after observing defendant's violence, the court did not address how the child's mental state might be negatively impacted if the court denies relocation,

A-0503-20

but plaintiff goes to California, and defendant would pursue the motion for full custody in New Jersey.

Moreover, the court ignored plaintiff's request for permanent relocation. The court questioned plaintiff's path for a relocation request, but these questions and consequent answers failed to develop the record or inform its decision. The judge used plaintiff's current living situation in New Jersey with a friend as a comparison to defendant's home but failed to consider the stability of the new home in California.

Under the factor addressing interaction of and relationship of the child with its parents and siblings, the trial judge found:

> [V]ery strong bonds with both children. Mom offers that she is afraid of dad based on what's happened. She has had to go to therapy, but that is really substantially undercut by her decision to leave the child with the father after this act that caused this trauma occurred. It just undercuts that substantially and in my view completely.

The court later clarifies that "[i]t is a neutral relationship in that both parties have relationships but when you put the relocation on top of that, it would suggest that that factor weighs in favor of remaining in the State of New Jersey."

The trial judge stated:

> The age of the child. Well, here I think that this is a factor that calls in my view against relocation. There

15

are strong family units. The factor number three is interaction and relationship with the parents, with the child and his parents and the siblings. Well, there [are] no siblings here, but we do have extended family on the father's side, and those extended family members that are cousins appear to be actively involved in the child's life, as are the grandparents on both sides, seeing the child in a regular basis. Weekly, in most cases.

Whether the court considered the extended family as a required factor or considered it more generally, the court did not consider sufficient other facts, ignored disputed facts, and abused his discretion in assigning weight.

## II.

Trial judges have discretion under Rule 5:8-6, especially since the 2002 revision, to determine both whether to interview a child in a contested custody case and whether the child has sufficient age, maturity, and intelligence for the trial judge to give due weight to that child's preference. D.A. v. R.C., 438 N.J. Super. 431, 455-56, 458 (App. Div. 2014), appealed after remand, No. A-4783-15T2 (App. Div. Apr. 17, 2018). In part, Rule 5:8-6 states:

> As part of the custody hearing, the court may on its own motion or at the request of a litigant conduct an in camera interview with the child(ren). In the absence of good cause, the decision to conduct an interview shall be made before trial. If the court elects not to conduct an interview, it shall place its reasons on the record.

16

While courts recognize it is an "exquisitely delicate task" to interview a child to consider their preference, they believe "all of the judges assigned to the Family Part, will strive to conduct the difficult task of interviewing children in contested custody cases with dignity, compassion, and great sensitivity . . . ." D.A. v. R.C., 438 N.J. Super. at 460.

On August 25th, plaintiff asked the trial judge to speak with the child to clarify what defendant's home is like. The trial judge responded:

> THE COURT: My first concern is whether or not the child is of sufficient age to make rational judgments and choices --
>
> [Plaintiff]: Mm-hmm.
>
> THE COURT: -- and preferences, and I generally have not found it appropriate to let a child [eleven] years of age testify. I just think it is not appropriate for a whole host of reasons, including putting the child inside the contest between her parents I don't think is an appropriate thing to do. So let's continue. Let's continue.
>
> [Plaintiff]: Okay, not a problem. I was just wondering if she was going to be able to say what she wanted to say, as far as her, you know, her relationship with her dad.
>
> THE COURT: I would read a letter from her. I would be happy to [see] what she has to say. But I don't think that interviewing her for the purpose of obtaining a position that I would then give weight to, I would accord weight to in my decision, I just don't know that

17

that is going to be valuable to me.  But if she wants to be heard, I certainly don't want to prevent her from exercising her voice.  If she wants to write me a letter, I would be happy to read it.  I just want to make sure that it's available to the defendant's attorney.

[(emphases added).]

While stating his factual findings for the best interests, the trial judge explained, however, that:

> The preference of the child when of sufficient age [and] []capacity to speak assumes to reason someone is to form an intelligent decision, mom has indicated during the hearing and subsequent to the hearing that she has a letter that she wants the court to read from the child. She offered the court the child as a witness.  I wrestled against the thought of having [an eleven]-year-old come into court when she knows she's going to be speaking for one parent or against another parent, I just, still at age [eleven], I don't find that she has that sufficient age and capacity to reason so as to form intelligent reasoned decision.  I don't think that that's appropriate with an [eleven-year-old].  So I have not read it.  It has not been offered.  I am sorry.  An e-mail indicated that (indiscernible) read it.

Thus, the judge noted in the analysis of each factor that the court was not considering the preference of the child.

This blanket concern is akin to the judge's general concern about emotional trauma in D.A. v. R.C., which did not provide a sufficient record under Rule 5:8-6.  See 438 N.J. Super. at 458.  Further, the blanket concern is

18

inconsistent with the guidance in <u>D.A. v. R.C.</u>, <u>id.</u> at 460-61, and <u>Mackowski v. Mackowski</u>, 317 N.J. Super. 8, 11-15 (App. Div. 1998), that interviewing a child in such cases is always a delicate and unfavored task, but should be conducted when appropriate, so that children may be heard in this process. Failure to provide such a record is grounds for reversible error. <u>See</u> <u>D.A. v. R.C.</u>, 438 N.J. Super. at 456, 461.

We reverse and remand for the court to determine whether it is in the child's best interests to relocate with plaintiff, to grant defendant physical custody upon plaintiff's relocation, or for another custodial arrangement. Such analysis must consider the child's preferences and insights.

Given the allegations related to the child's therapy and fear of her father and his manipulation, we strongly encourage the use of a mental health expert in assessing the child's best interests, but without replacing the court's analysis with that of an expert. <u>See</u> <u>id.</u> at 453-54.

Moreover, we conclude the case should be heard by a different judge on remand because "it would place the court in an untenable position to now have to reevaluate a case in which it had already expressed a preference . . . ." <u>See</u> <u>Luedtke v. Shobert</u>, 342 N.J. Super. 202, 219 (App. Div. 2001).

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0503-20