**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1543-22

C.G.,

    Plaintiff-Appellant,

v.

D.W.,

    Defendant-Respondent.

_____

Submitted February 5, 2024 – Decided March 1, 2024

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-0612-17.

Ronda Casson Cotroneo, PC, attorneys for appellant (Ronda Lillian Controneo, on the brief).

Rodríguez Law Firm LLC, attorneys for respondent (Maritza Rodríguez, on the brief).

PER CURIAM

Plaintiff C.G. appeals from the trial court's December 16, 2022 order denying her request to relocate—with her son Sam—from Kearny to the Borough of Franklin.[1]  Based on our review of the record and the applicable legal principles, we vacate and remand for further proceedings consistent with this opinion.

## I.

Plaintiff and defendant D.W. were married in November 2013, separated in January 2016, and divorced in June 2017.  They had one child together, Sam, born in 2012.  Sam is defendant's only child.  Plaintiff married her current husband, B.A., in 2020.  Plaintiff and B.A. have three children together, ages six, two, and one.

When the parties divorced, both resided less than a twenty-minute drive from each other and from Sam's school.  The parties executed a separation agreement wherein they agreed to generally split Sam's time between plaintiff and defendant equally.  They alternated weekends and major holidays and would split the weekdays.  The marital settlement agreement ("MSA") gave both parents joint legal and residential custody of Sam.  Plaintiff was named parent

---

[1]  We refer to the parties, child, and other family members involved in this case using either initials or pseudonyms to protect the privacy of the child.  See R. 1:38-3(d).

of primary residence ("PPR") for education purposes only. The parenting time outlined in the separation agreement was incorporated into the MSA. After the divorce, the parties successfully communicated and shared parental responsibilities for Sam until this relocation dispute.

Pursuant to the MSA, defendant retained ownership of the marital home and has resided there since 2014. Defendant and Sam are the only occupants, and defendant often works from his home office. He lives approximately ten to twelve minutes away from Sam's current school. Defendant has worked as an associate creative director for the same marketing and advertising agency since the divorce. He testified his company is flexible with his schedule, so he can go into the office on days he does not have Sam. However, his schedule does not allow him to transport Sam to and from extra-curricular activities.

Plaintiff has moved multiple times since the divorce. Initially, she moved out of the marital home to an apartment in Nutley. Thereafter, she lived in Harrison and then at two different apartments in Kearny before purchasing her home in Franklin. Plaintiff has also had several different jobs since the divorce.[2]

---

[2] During the marriage, plaintiff worked as a paralegal for two years but moved to a different paralegal job. She then worked as a mental health specialist at a university for two-and-a-half years until the divorce, when she became a personal trainer. She then opened a cash advance business in 2016 with B.A.'s

In 2018, Sam started kindergarten at Hudson Arts and Science Charter School ("Hudson Charter") in Kearny, where he remains today. He was referred for an Individualized Education Plan ("IEP") in December 2019 to address concerns with English and math and to provide speech and occupational therapy. During the 2021-2022 academic year, Sam was in third grade and received math and English resource support. Sam's grades slowly improved until, during the fourth quarter, he got straight A's. He also received math support in 2022-2023 but less frequently. His IEP describes no behavioral problems.

When Hurricane Ida hit in September 2021, plaintiff's Kearny apartment flooded, and she began searching for a new home for her growing family. Shortly thereafter, plaintiff made an offer on a house in Franklin—roughly sixty miles from her Kearny apartment—and moved into the house in November. Plaintiff did not tell defendant she had purchased a house until her bid was accepted in mid-September. At that time, she suggested that Sam live with her a majority of the time and change schools to one closer to her new home.

Defendant filed an order to show cause seeking to prevent plaintiff from relocating and changing Sam's school. On September 30, 2021, the order was

_____

assistance. She also briefly owned a photography studio and then opened a trucking business.

A-1543-22

granted, in part, directing Sam to continue attending Hudson Charter, setting a plenary hearing date, and ordering the parties to choose a mutually agreeable expert to opine on the best interest of the child. The parties agreed to retain a joint expert for a best interest custody evaluation of Sam in the context of the intra-state relocation application.

The court conducted a hearing over the course of four days between June and July 2022.[3] The court heard testimony from defendant, plaintiff, and plaintiff's husband, sister, and mother. No expert testimony was presented. Plaintiff and her witnesses testified regarding Sam's interactions with plaintiff's family and their various recreational activities. Plaintiff testified Sam "loves being a big brother" and has a great relationship with his younger siblings. She testified concerning Sam's relationship with other members of her family and the close and supportive extended family that lived in proximity to plaintiff. Plaintiff and her family members also raised concerns regarding Sam's well-

---

[3] Because we limit our discussion below to the court's analysis of "the preference" of the child under N.J.S.A. 9:2-4(c) and the court's decision not to conduct a child interview pursuant to Rule 5:8-6, we only briefly summarize the trial testimony.

A-1543-22

being when at defendant's house.[4]  Plaintiff believed this emotional turmoil to be serious enough to warrant seeking a therapist for Sam.

Since the December 2022 order, Sam has continued to attend Hudson Charter and lived primarily with defendant.  Plaintiff acknowledged 2022 was Sam's best year in school and that he made the honor roll every semester, which was in part the result of defendant's efforts.[5]  Defendant testified he always had Sam attend school in person as opposed to virtual, unlike plaintiff, despite Sam not liking virtual school.  Sam also missed school at times when he was with plaintiff, but had perfect attendance when with defendant.  Notwithstanding plaintiff's concerns regarding Sam needing therapy, he was only seen by a therapist once since plaintiff moved to Franklin, and the therapist has not shown any concern regarding Sam.  Defendant also testified that he provides structure to Sam and teaches him various "real life" skills he needs to learn such as doing laundry, raking leaves, and shoveling snow.  They also cook together and do various activities and enjoy watching television shows together.

---

[4]  Defendant testified he texted plaintiff stating that Sam "always breaks down like a little cry baby."  Defendant also acknowledged calling Sam derogatory names in conversations with plaintiff.

[5]  In March 2022, prior to the relocation hearing, plaintiff also unilaterally unenrolled Sam from his school by checking a box on the re-enrollment form marked "I do not wish to continue enrollment for the upcoming year."

The trial court determined plaintiff could not relocate with Sam and that it was in Sam's best interest to remain at Hudson Charter. It entered an order designating defendant as PPR for educational purposes only and modified the parenting schedule giving defendant custody during the week, plaintiff custody on weekends during the school year, and reversing custody in the summer. Despite the court indicating it would conduct a child interview, Sam was never interviewed.

## II.

Plaintiff contends the trial court committed reversible error when it misinterpreted and misapplied the best interests factors under N.J.S.A. 9:2-4, and in denying plaintiff's relocation request. Plaintiff further posits the trial court erred by not interviewing Sam or, in the alternative, failing to articulate its reasons for not interviewing him. She asserts the trial court erred when it failed to consider plaintiff's proposed parenting plan. Plaintiff urges us to remand to a different judge because the trial judge's ruling expressed a preference for the outcome.

Our standard of review is such that we will not disturb a trial judge's factual findings when they are "supported by adequate, substantial and credible evidence." Rova Farms Resort v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974).

7

We only "disturb the factual findings and legal conclusions of the trial judge [when] we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Family courts maintain "special jurisdiction and expertise in family matters," so "appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred." Ricci, 448 N.J. Super. at 564.

Courts should apply the best interests analysis to determine "cause" under N.J.S.A. 9:2-4 in all relocation disputes where parents share legal custody. See A.J. v. R.J., 461 N.J. Super. 173, 176 (App. Div. 2019), where we concluded

<u>Bisbing v. Bisbing</u>, 230 N.J. 309 (2017), also applies to intra-state relocation cases and that trial courts must apply N.J.S.A. 9:2-4.

N.J.S.A. 9:2-4(c) provides the statutory factors for a best interests analysis, requiring that:

> [i]n making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; <u>the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision</u>; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.  A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.
>
> [(Emphasis added).]

Failure to conduct an appropriate best interests analysis and application of incorrect law both constitute reversible error.  <u>A.J.</u>, 461 N.J. Super. at 182-83.

A-1543-22

We confine our analysis to the issue concerning the court's failure to conduct a child interview. Prior to the commencement of testimony at the trial, plaintiff requested the court to conduct an interview of Sam. The court noted it would conduct such interview "at some point in time." The court also invited the parties to submit proposed questions for the interview. However, when the court rendered its decision, it noted, as to "the preference of the child" factor under N.J.S.A. 9:2-4(c), that "neither party accepted the court's invitation to submit proposed questions, nor was the child produced for an interview." The court did not address the factor any further, and there is nothing in the record besides an initial discussion on the first day of the hearing to suggest any action was taken to secure an interview.

Rule 5:8-6 provides in pertinent part:

> The court may, in order to protect the best interests of the children, conduct the custody hearing in a family action prior to a final hearing of the entire family action. As part of the custody hearing, the court may on its own motion or at the request of a litigant conduct an in camera interview with the child(ren). In the absence of good cause, the decision to conduct an interview shall be made before trial. If the court elects not to conduct an interview, it shall place its reasons on the record. If the court elects to conduct an interview, it shall afford counsel the opportunity to submit questions for the court's use during the interview and shall place on the record its reasons for not asking any question thus submitted.

[(Emphasis added).]

As we noted in <u>D.A. v. R.C.</u>, the Supreme Court amended <u>Rule</u> 5:8-6 in 2002 to provide trial courts with discretion as to whether to conduct a child interview in a contested custody case.[6]  438 N.J. Super 431, 455 (App. Div. 2014).  Importantly, however, we further noted that <u>Rule</u> 5:8-6 "contains equally clear, non-discretionary" language that mandates "[i]f the court elects not to conduct an interview, it shall place its reasons on the record."  <u>Id.</u> at 456.

Although the decision to interview a child is now discretionary under <u>Rule</u> 5:8-6, the court must nevertheless evaluate "the preference of the child" pursuant to N.J.S.A. 9:2-4(c) in making a best interests determination in the context of a relocation hearing.  If the preference of the child can be derived from some other source, such as expert testimony, it may provide a basis for the court to not conduct a child interview.  The parties in this case agreed to retain a custody

---

[6] The Rule previously stated that the court "shall" conduct a child interview.  <u>R.</u> 5:8-6 (1992).  The Supreme Court amended <u>Rule</u> 5:8-6, in part, based on the recommendation of the Family Practice Committee.  "[O]rdinarily . . . mental health professionals are better equipped than the judge . . . to conduct a meaningful interview."  Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1.4.3 on <u>R.</u> 5:8-6 (2024); <u>see</u> Fall & Romanowski, <u>Current New Jersey Family Law, Child Custody, Protection & Support</u>, § 23:3-6(c).  Here, there was no such interview of the child by a mental health professional which may have provided some insight to the judge as to the child's preference under N.J.S.A. 9:2-4(c).

A-1543-22

expert but never did so. Accordingly, the court was left without sufficient information to address this important factor. Our Supreme Court has noted that "in all custody determinations, the preference of the child[] . . . must be accorded 'due weight.'" Beck v. Beck, 86 N.J. 480, 501 (1981) (quoting Lavene v. Lavene, 148 N.J. Super. 267, 271 (App. Div. 1977)). In the absence of expert testimony, it is difficult, if not impossible, to analyze the "preference of the child" factor. As we noted in Mackowski v. Mackowski,

> Too often, judges deciding issues in the Family Part must rely solely on the "voices" of the attorneys who prepare the competing affidavits and certifications on the pretense that the litigant is speaking. [The judge's interview] insures that where custody is a "genuine and substantial" issue, the judge will not be insulated from seeing and hearing the subject of the dispute. The "voice" seen and heard will not be that of the lawyer or litigant but that of the child who is the subject of the dispute. The value of a properly conducted interview enabling the judge to see and hear the child first-hand outweighs the possibility of harm that may befall a child by being subjected to the interview process. On balance, it is not the interview that is ultimately harmful, but the custody dispute between the parties that potentially wre[a]ks havoc with the child.
>
> [317 N.J. Super. 8, 14 (App. Div. 1998), superseded by statute on other grounds, R. 5:8-6, as recognized in D.A., 438 N.J. Super. at 457.]

Here, in discussing the preference of the child factor, the court noted "neither party accepted the court's invitation to submit proposed questions, nor

was the child produced for an interview." No doubt the better practice would have been for plaintiff's counsel to more actively pursue the scheduling of the child interview. Nevertheless, this is ultimately the court's responsibility, particularly when it advised the parties of its intent to interview Sam.

This was not a situation where the child lacked the appropriate age or maturity to be interviewed. This is also not a circumstance where the child was refusing to speak to the court, or plaintiff's counsel was somehow interfering with the court's ability to interview the child. Without the interview or expert testimony, the court was not in a position to meaningfully address the "preference of the child" factor under N.J.S.A. 9:2-4(c), and its analysis was, therefore, incomplete.[7] In the absence of a more compelling explanation as to why the interview was not conducted, we conclude the court misapplied its discretion in failing to conduct the interview, particularly in the absence of expert testimony. Accordingly, we are constrained to vacate the court's order and remand for further proceedings.

---

[7] Additionally, a child interview may provide the court insight on other factors under N.J.S.A. 9:2-4(c) above and beyond the "preference of the child." For example, Sam's interview may inform the court's decision on "the interaction and relationship of the child with [his] parents and siblings," "the needs of the child," and "the stability of the home environment." Ibid.

A-1543-22

On remand, the court shall conduct an interview of the child and rebalance the factors under N.J.S.A. 9:2-4(c). Moreover, because it has been some time since the trial, we recognize there may be new and relevant information pertinent to the court's best interest analysis. Accordingly, the parties should be permitted to submit updated certifications regarding any new information they believe is relevant for the court's consideration. We leave it to the court's sound discretion as to whether additional testimony is needed after considering any additional information provided by the parties. The court shall conduct a case management conference within thirty days and fix reasonable deadlines for the parties to submit this additional information. The parties may also submit questions for Sam's interview.

Finally, we reject plaintiff's argument that the matter should be remanded to a different judge. We do not view the court here as having been committed "to its findings" such that it is necessary to have the matter addressed on remand by a different fact finder. See N.J. Div. of Youth and Fam. Servs. v. A.W., 103 N.J. 591, 617 (1986). The remaining arguments raised on the appeal lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1543-22