**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3249-24

BRAD A. HAYES,

     Plaintiff-Respondent,

v.

STEPHANY CRUZ,

     Defendant-Appellant.

_____

          Submitted January 22, 2026 – Decided February 26, 2026

          Before Judges Mawla and Puglisi.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FD-06-0359-18.

          Klineburger Law, attorneys for appellant (Lisa G. Nolan, on the brief).

          Respondent has not filed a brief.

PER CURIAM

Plaintiff Brad A. Hayes and defendant Stephany Cruz are the biological parents of a daughter, K.E.[1] (Kayla).  Defendant appeals from the May 15, 2025 Family Part order denying her application to remove Kayla to Utah.  We affirm.

I.

Shortly after Kayla's birth in 2017, the parties entered into an agreement for joint legal custody, with defendant as the parent of primary residence and plaintiff the parent of alternate residence.  Plaintiff had parenting time every Sunday afternoon and any other mutually agreed on dates, which was modified in September 2021 to include every other Friday through Sunday and every other Wednesday overnight.

Three months later, plaintiff filed an order to show cause, which was deemed non-emergent and converted to a motion to be heard in the normal course.  During a plenary hearing on the application, defendant informed the court she wanted to remove Kayla to Nevada because her then-fiancé, now-husband, worked there.  In September 2022, the court determined it was not in Kayla's best interests to move to Nevada, and defendant moved in with her

---

[1]  We use the child's initials and a pseudonym to protect her privacy.  R. 1:38-3(d)(3).

A-3249-24

mother in New Jersey to remain near the child.[2]  Defendant married in February 2023 and moved to Nevada to live with her husband.

As a result of defendant's relocation, the parties modified their custody and child support arrangement in a November 8, 2023 consent order.  Under its terms, plaintiff was designated the parent of primary residence and defendant exercised parenting time during the summer, rotating holidays, and trips to New Jersey.  Defendant also was entitled to "nightly [FaceTime] calls with [Kayla] at a reasonable time before the child's bedtime for a reasonable period of time."  The consent order modified child support as follows:

> In consideration for [defendant]'s payment of all transportation expenses, [she] will not be required to pay child support, at this time.  However, she will informally contribute to the support of the child by purchasing clothing and personal items for the child and sharing in the expense of any extra[]curricular activities for the child.  Any child support obligation payable by [p]laintiff to . . . [d]efendant [is] hereby vacated.

In April 2025, plaintiff moved to establish child support and have his name added to Kayla's birth certificate.  Defendant then filed the instant motion to remove Kayla to Utah, where she had relocated with her husband, and modify custody to designate her as the parent of primary residence and plaintiff the

---

[2]  The September 2022 order is not in the record on appeal.

parent of alternate residence. Although plaintiff did not file opposition to the motion, the court held a hearing to determine whether the move was in the child's best interests.

During the hearing, defendant testified that around the time defendant moved in with her mother, Kayla began having difficulties in school and exhibiting disruptive and angry behaviors. In the fall of 2023, Kayla was referred to the child study team, underwent a social assessment, and received an individualized education program, which was implemented in March 2024. For that school year, Kayla was primarily in a general education classroom, with an aide to assist with her emotional outbursts. Defendant testified she was "doing some interventions by putting [Kayla] in tutoring and extracurricular activities" to give her an outlet, but defendant could not continue to do so once she moved.

Upon entering the 2024-25 school year, Kayla was placed in a special education classroom with four other students. Defendant testified it was difficult for Kayla to make friends at school, and she struggled with reading and writing but was better at math. Her grades were improving by January 2025 but were still not where defendant thought "they need[ed] to be."

Defendant stated she contacted plaintiff "all the time" about Kayla's education, but he did nothing to address her concerns or the child's deficits. She

testified, "I always give my opinion of what should we be doing to, you know, make it better for her." Although they both agreed Kayla should be taken out of special education classes and moved back into general education classes with an aide, plaintiff told defendant he was still waiting for the school to respond to him seven to eight months later.

Defendant believed Kayla would fare better in school if she were involved in extracurricular activities. When defendant was the parent of primary residence, she enrolled Kayla in swimming lessons, art lessons, and music classes. When Kayla spent the summer of 2024 in Utah with defendant, she was also enrolled in various programs. Defendant testified she told plaintiff "all the time" Kayla should be involved in extracurricular activities, but he did not follow up with enrolling her.

Defendant also voiced her concerns plaintiff was not meeting Kayla's medical needs. In January 2025, Kayla had a urinary tract infection (UTI), which "she had . . . for quite some time." Defendant testified plaintiff denied knowledge of Kayla's symptoms but later admitted Kayla complained to his wife about them. In spring 2025, defendant brought Kayla to urgent care, where she was diagnosed with another UTI.

A-3249-24

During a subsequent trip to the pediatrician, the doctor told defendant Kayla should get "an x-ray of her hands to check her bone age." Defendant told plaintiff it needed to be done as soon as possible but she "didn't have time" to take her because she was flying back to Utah. Plaintiff did not take the child for the x-ray.

Defendant also testified plaintiff did not communicate with her about Kayla's education and health, and detailed an incident regarding a Mother's Day event at Kayla's school. Although she told plaintiff she would attend the event, when she arrived at school Kayla was absent due to a dentist appointment. Defendant testified plaintiff never advised her of the appointment, despite knowing she was attending the assembly.

Defendant discussed text messages and social media postings wherein plaintiff called her derogatory names and criticized her parenting of Kayla. Defendant testified plaintiff "often" sends her similar text messages when "something doesn't go how he wants it." When she confronted him about the social media post, he "got upset and . . . told [her] off." She also submitted screenshots of text messages she sent to plaintiff, asking him to have Kayla call her, to which she received minimal to no response.

A-3249-24

Defendant explained her move from New Jersey was difficult for Kayla: "She tells me all the time, every time I've got to drop her off, oh, I want to stay with you, I want to be here with you." Defendant testified she told plaintiff about Kayla's wishes, but he "doesn't think about where she wants to be."

Defendant also testified if Kayla moved to Utah, she would go to a better school, take horseback riding lessons and educational programs, and could more easily befriend other children in the neighborhood. She proposed to flip the parenting schedule with plaintiff so he could have Kayla during the summer, as well as alternate holidays and spring break.

After discussing defendant's travels between Utah and New Jersey, her counsel asked her about her child support obligation. The following colloquy occurred:

> COUNSEL: Okay. What's the current child support situation between yourself and [plaintiff]?
>
> DEFENDANT: So, I don't have to pay child support because I provide transportation.
>
> COUNSEL: Okay. And is that outlined in the [consent] order that we talked about . . . ?
>
> DEFENDANT: Correct.

After defendant rested her case, the judge told plaintiff: "That was a complete waste of time, what I just heard. So if you want to be heard, I'll give

7

you five minutes." Plaintiff asserted he texted defendant about the dentist appointment scheduled during the Mother's Day event. He claimed Kayla's dental issues arose because defendant neglected to take care of her teeth when she was younger and noted he paid for her medical insurance.

Plaintiff addressed defendant's assertion he failed to facilitate phone calls between her and Kayla, stating "when [defendant] texts me, I just tell [Kayla], . . . call your mom. I tell her at least two or three times a day. [Kayla] has her own phone." He asserted defendant does not often call Kayla and had done so "maybe . . . a dozen times" in the prior three months.

After hearing from plaintiff, the judge denied his application for child support because he failed to file any financial information. The judge then advised defendant: "If he does re-file, you're going to respond with financials, and if you don't, I'm going to impute a high income to you. You're going to follow the rules, both of you."

The judge then rendered his decision on defendant's removal motion, beginning with his credibility finding as to her:

> Now, you, you just lied to me. [Counsel] asked you a question about why you don't pay child support, and your answer was because I pay for all of the transportation. That was a half-truth. You lied to this court. I have your agreement. I have the court order.

And that kind of blew your credibility, not that your credibility was stellar to begin with.

The judge then read from the November 8, 2023 consent order:

> JUDGE: ["]In consideration for [defendant]'s payment of all transportation expenses [defendant] will not be required to pay child support at this time.["] If that's all the order, the provision under Paragraph eleven said, you would have been truthful, but you lied. You're a liar to this court. Lie by omission. And I don't find you credible.
>
> ["]However, she will informally contribute to the support of the child by purchasing clothing and personal items for the child and sharing in the expense of any extracurricular activities for the child.["] Why did you fail to mention that?
>
> DEFENDANT: I wasn't thinking about it. But I do . . . .
>
> JUDGE: Well, you're under oath. You're supposed to tell the truth, the whole truth, and nothing but the truth.

Defendant's counsel objected to the judge's finding defendant was lying, prompting the following interaction:

> COUNSEL: Your Honor, I'm going to object. I—
>
> JUDGE: You can't object to my findings that she's not credible. Sit down, [counsel].
>
> COUNSEL: I don't—Your Honor, I have to—
>
> JUDGE: [Counsel], sit down.

9

COUNSEL: I will. But I just want to put on the record that I don't know where this is coming from. I don't know how she is lying when she says paragraph eleven says in consideration—

. . . .

JUDGE: Because I find that your client was extremely arrogant, self-serving, self-centered.

COUNSEL: That's fine. I want to know what the lie is, though. That's what I don't understand.

JUDGE: The lie by omission. She failed to present the rest of the story, as Paul Harvey would say.

. . . .

She wanted to leave this court with the impression that the only reason she wasn't paying child support is because of these expenses. She did not mention the fact, not once, she didn't even hint that there was more to that provision, that as part of that she was still supposed to provide assistance to the child for clothing and extracurricular activities. That's my finding. If you want to dispute it you can appeal it, and the Appellate Division will make the appropriate rulings.

COUNSEL: That's fine. I just don't understand how we get . . . from her testimony that the consideration for no child support for transportation to lying about not paying for—

JUDGE: Because this was just one more of a series of self-serving, arrogant parts of her testimony, [counsel].

. . . .

10

Your client shot herself in the foot. She has absolutely zero credibility with this court after I heard that body of testimony.

COUNSEL: And again, Your Honor, I am going to state for the record I absolutely—I can disagree with Your Honor, and Your Honor obviously disagrees with me, but I don't know how I get there about lying. I don't know how we even got there—

. . . .

I'm kind of shocked by the statements about lying and misrepresentation.

JUDGE: Well, [counsel], you can be shocked all you want, and if you want to take me up on appeal, and ask the Appellate Division to disturb my findings of credibility . . . feel free. That's how our system works. But [defendant], I found that you are devoid of credibility. . . . [F]irst of all, your demeanor. You came off as being very rehearsed, very arrogant. Everything . . . [in] your testimony [was about how], [plaintiff] is the worst human being, the worst father that's ever walked the face of the earth. Everything is his fault. He doesn't communicate. He doesn't do this. He doesn't do that. He doesn't follow up with . . . any type of medical care. And yet . . . not once did I hear that you have a problem with communicating. It's all [plaintiff]. It takes two to tango. And that is the impression you left with this court.

Again, arrogant, self-serving, everything. Not much . . . objective evidence that you presented. It was "I feel, I think." I found you were very calculated in the way you presented yourself.

11

I made a number of notes. This is selfish, self-serving. [Plaintiff] is one hundred percent the bad guy. No self-awareness, no nothing.

I remind you, you are the one who moved to Utah, not [plaintiff]. You're the one who moved to Utah. And I find that you have absolutely not established that there's any significant change in circumstances simply because an eight-year-old who is in special ed[ucation] says to her mother, that she obviously misses and loves to spend time with her, that she wants to go with you is not binding on this court, and it certainly doesn't rise to the level of objective evidence that would cause this court to reconsider what the two of you just agreed to less than fifteen months before you filed this.

Your demeanor was off-putting the way you presented yourself.

. . . I didn't follow how you testified that she's doing okay in school, her grades are up, but with absolutely no basis you throw in there that she's not where she should be. It's all subjective. It's all self-serving. This is the second time in less than two years you are here asking this court [for] permission to uproot this little girl and send her across the country.

This case doesn't even rise to the level of preponderance of the evidence. Not credible testimony, and even if the court did find it credible there's no objective evidence that would justify turning this on its head.

The previous order remains in full force and effect. You two better learn how to communicate, and you'd better do it fast. Thank you.

12

The next day, the judge orally supplemented his findings "to be more thorough." He explained he had been "rather abrupt" the day before, "not necessarily consistent with [his] approach, especially in FD custody hearings." The judge acknowledged he "didn't react too kindly" when rendering his decision as he "was interrupted by counsel," but "underst[ood] why counsel wanted to make sure he preserved" his objection. He admitted he "certainly should have handled it a different way" and got "sidetracked."

The judge reiterated his finding defendant was dishonest, acknowledging "[l]ie is a strong word, but the court did find after accepting all of her testimony on direct examination[,] . . . she was devoid of credibility." He explained defendant had a "very haughty and arrogant" demeanor and lacked self-awareness.

The judge noted defendant "paint[ed] herself as the perfect parent while painting [plaintiff] as . . . some type of villain." Her story "was based on conjecture" and hearsay of "a child who undoubtedly has gone through some level of trauma" based on defendant's "conscious decision to relocate with her significant other to the other side of the country."

After defendant's previous motion to remove Kayla was denied, the parties entered into an agreement in November 2023, and this "motion to set aside that

13

rather thorough agreement was filed just a little over a year after that was entered." Although the judge "found a prima facie case to at least start the case, where [defendant] was talking about continuity of education and health concerns," defendant's testimony revealed these concerns were subjective.

Regarding Kayla's educational issues, the judge found:

> [I]n regard to education [defendant] speculated with absolutely nothing, and . . . even though I find her devoid of most credibility because of her demeanor, because of her attitude, because . . . even the look on her face when she was testifying, she almost cringed when she was mentioning [plaintiff], every time that came up.
>
> But . . . she presented that the child was doing okay in school and that her grades had even slightly improved, but then she would speculate [Kayla] should be doing better and she can be doing better. We don't know that[ and s]he presented no evidence of that. This was all speculation. I have no doubt that the school in Utah . . . is a good school. But there's no evidence . . . the school she's in is a less than standard school.

As to Kayla's medical issues, the judge likewise determined:

> [T]here are no health concerns. . . . The child had a [UTI], and quite frankly it amounts to a big so what. These things happen. There was a lot of speculation, a lot of supposition. There were no facts. Just because the child had [a UTI,] does not mean [plaintiff] is shirking his responsibilities . . . .

14

The judge found the parties' communications documented they did not "necessarily align" on how Kayla's schooling "should be handled." The texts showed plaintiff "did capitulate to [defendant]'s wishes to mainstream the child in some . . . educational areas, but it was very clear . . . anything [plaintiff] did was met with disapproval and consternation from [defendant]." The judge concluded the parties' "different parenting style . . . d[id] not even come close" to satisfying the best interests standard under Bisbing v. Bisbing, 230 N.J. 309 (2017).

The judge also discussed defendant's testimony that Kayla misses her:

> It is of no moment to this court that the child tells [defendant] that she wants to come with her, buy a second plane ticket. Of course the child misses her mother. [Defendant] up and moved across the country, and is no longer such an intimate and significant part of her life, but [defendant] presented nothing to support . . . the child's best interests [would be] served by that change of scenery. It's axiomatic that the child would, in all likelihood, have the same attitude if it were [plaintiff] that lived across the country and . . . her time with [him] was limited.

It was "clear" to the judge Kayla "had a solid relationship with both of her parents" as they were "both involved in her life . . . before [defendant's] relocation."

15

The judge reiterated his finding defendant lacked credibility and was dishonest by omission, noting "[t]he look on her face, the attitude, the tone of her voice when she was talking, the disdain, the disgust, the lack of insight, the lack of personal accountability, it was all about her and very little about" Kayla. He further explained that even if defendant were credible, "absolutely nothing she presented, even without hearing from [plaintiff], . . . came close to moving the needle to justify . . . finding by a preponderance of the evidence that there was any significant change in circumstances to proceed." He concluded:

> [E]ven if we get to that there was no evidence that would rise to the level of preponderance of the evidence when on balance that this child should be subject to having the custody arrangement changed. She has resided in the area for most of her life. She is with her father. Continuity of . . . education is important. She does have continuity of education here. There is no evidence that she's not getting a good education. As I've stated, her grades are getting better. They're improving. But in mom's opinion she could be doing better.
>
> . . . [S]ince it was clear from the limited text messages and testimony that dad does capitulate, there is communication between the two of them, [and] there is nothing that gravitates in the opposite direction.

On appeal, defendant argues she was denied a fair hearing due to judicial bias. She asserts the judge's findings were unsupported by the credible evidence, and removing Kayla to Utah is in the child's best interests.

16

II.

The scope of our review of Family Part orders is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). Due to its special expertise in family matters, we owe substantial deference to the Family Part's findings. Cesare v. Cesare, 154 N.J. 394, 413 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12. The deference owed to the Family Part is strong where the evidence is primarily testimonial and rests on the judge's credibility findings. See Gnall v. Gnall, 222 N.J. 414, 428 (2015).

We do not disrupt a trial judge's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we review legal conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

We first address defendant's contentions she was denied a fair hearing because the judge was biased. She argues the judge's unrestrained reaction to her testimony was so extreme it created the perception he was biased against her, resulting in a credibility determination unsupported by the record.

Defendant argues the judge's finding she lied about child support is "[u]tterly baffling," and strongly suggests he disliked her so much that he was no longer objective. She also denies unnecessarily attacking plaintiff, and contends the judge did not consider evidence showing plaintiff's poor ability to communicate as a co-parent, including his social media posts.

"[J]udges must avoid acting in a biased way or in a manner that may be perceived as partial." DeNike v. Cupo, 196 N.J. 502, 514 (2008) (emphasis omitted). A judge must recuse themselves from "proceedings in which their impartiality or the appearance of their impartiality might reasonably be questioned," Code of Jud. Conduct r. 3.17(B), or if "there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(g).

An appearance of impropriety exists if "a reasonable, fully informed person [would] have doubts about the judge's impartiality." DeNike, 196 N.J. at 517. "[T]he mere appearance of bias may require disqualification." State v. Marshall, 148 N.J. 89, 279 (1997) (citing R. 1:12-1(f)). "However, bias is not established by the fact that a litigant is disappointed in a court's ruling on an issue." Id. at 186. "[T]he belief that the proceedings were unfair must be objectively reasonable." Id. at 279 (citing R. 1:12-1(f)). "Any party, on motion

made to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." R. 1:12-2.

Having considered the record pursuant to these principles, we are unpersuaded the judge was biased and prejudicially rendered his decision. Defendant did not raise these issues or seek recusal of the judge on those grounds. As a result, she waived this issue, see State v. Russell, 481 N.J. Super. 333, 353 (App. Div. 2025), which is improperly raised for the first time on appeal, see Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Even considering the substance of defendant's claims, we are unpersuaded they merit reversal. Defendant does not allege, nor does the record indicate, the judge acted intemperately during counsel's presentation of defendant's testimony. Rather, the judge, in his words, "didn't react too kindly" when counsel interrupted him when rendering his decision. He then acknowledged the issue and remedied it by issuing a supplemental decision the next day, wherein he reiterated his findings and conclusions. We recognize the judge's tone and word choice in the moment may have reflected his irritation with counsel, but his findings of credibility, both after the hearing and in his supplemental decision, were grounded in his observations of defendant's

demeanor and presentation.[3]   Thus, we are satisfied a fully informed person would not doubt his impartiality.

We also conclude the denial of defendant's motion was supported in the record because she failed to meet her burden to show a change in circumstances to warrant upending the November 2023 consent order.  "A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed by the court, is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4."  Bisbing, 230 N.J. at 322 (citing Beck v. Beck, 86 N.J. 480, 496 n.8 (1981)).  Indeed, the "moving party must bear the threshold burden of showing changed circumstances which would affect the welfare of the child[]."  Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993); see also Beck, 86 N.J. at 496 n.8.

If the movant demonstrates a change in circumstances, they must also "establish 'cause' under N.J.S.A. 9:2-2."  Bisbing, 230 N.J. at 311, 313.  In such cases, the trial court must determine whether there is "cause" by "weighing the factors set forth in N.J.S.A. 9:2-4, and other relevant considerations," as well as

---

[3]  We deem defendant's offer to provide us with the audio recording of the hearing unnecessary, because the judge's tenor was evident in the transcript.

deciding "whether the relocation is in the child's best interests." Id. at 313.

When this matter was heard, N.J.S.A. 9:2-4(c) required a court to consider:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

After considering defendant's testimony, the judge determined she failed to present any objective evidence demonstrating a change in circumstances regarding Kayla's education or health. The child's difficulties in school predated defendant's relocation and much of defendant's testimony was, as the judge found, subjective and speculative. Defendant testified Kayla was doing "okay" but her grades were not where defendant thought they should be. The parties disagreed on how to proceed, and defendant was dissatisfied with plaintiff's lack

21

of alacrity, but these co-parenting issues did not constitute a change in circumstances.

As to Kayla's health issues, defendant testified the child had two bouts of a UTI for which she was treated. Defendant complained plaintiff did not take Kayla to get hand x-rays "right away," but she too did not take the child for x-rays at any time prior to the hearing. Thus, the judge concluded defendant's subjective concerns about the child's minor medical issues were "a lot of speculation, a lot of supposition."

Because defendant did not demonstrate a change in circumstances, the judge was not required to consider whether, under the factors outlined in N.J.S.A. 9:2-4(c), a removal to Utah would be in Kayla's best interests. We therefore decline to address defendant's arguments on that point.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

22